## METZ v. METZ.

1. EVIDENCE—HEARSAY.—It is hearsay for a witness to state what he heard an attorney say to a party in interest in relation to his rights.

2. IBID.—DECLARATIONS—ADVERSE POSSESSION—REBUTTAL.—Where one party introduces as original evidence declarations of a party while in possession of land, to show that his holding was not adverse, the other party *in reply* and to *rebut* this testimony may introduce his declarations in his favor when they accompany acts, or proposed acts, of ownership. Cases reviewed.

3. IBID.—ADVERSE POSSESSION.—In proving adverse possession, it is competent for a witness to state that the party in possession received the rents, had possession of it, and paid taxes.

4. IBID.—REPUTATION—TITLE to land cannot be proved by showing the reputation in the community as to ownership.

5. ADVERSE POSSESSION—PRESUMPTION.—Twenty years *open, notorious, adverse* possession are required to presume title.

6. IBID.—COTENANTS—OUSTER.—Where one cotenant agrees with another to take possession of the land owned in common and hold for benefit of all, the possession is permissive as to the party to the agreement.

7. IBID.—. IBID.—IBID.—PRESUMPTION—TITLE may be presumed against one cotenant, when it could not be so presumed as to other cotenants. The principles stated upon which the doctrines of title by presumption and the limitations of actions by statute rests.

Before GARY, J., Lexington, February, 1896. Reversed.

Action by the heirs at law of Elizabeth Metz against Levi Metz, John A. Metz, Sallie Gibson, and the Commercial Bank, for partition of two tracts of land in Lexington County and one in Richland County. Upon motion of plaintiffs, certain issues were submitted to a jury, which were answered in favor of plaintiffs.

Upon the entry of the verdict, the defendant bank immediately gave notice of a motion for a new trial upon the minutes of the Court. This motion, it was agreed, should be postponed, to be heard in connection with the hearing of the main cause at Columbia. Thereafter the said cause came up for a hearing before his Honor, Judge Gary, at Columbia, in pursuance of the agreement entered upon the

minutes of the Court at Lexington, S. C. Whereupon counsel for the defendant, Commercial Bank, moved the Court for a new trial upon the following grounds, stated orally at the time of agreement, to wit: 1. Upon the ground that the stenographer's notes of testimony had been misplaced, and the testimony of the witnesses could not be obtained for consideration of the Court. 2. Upon the ground that it was error, on the trial before the jury, for the presiding Judge to exclude testimony of the witness, E. T. Rauch, and of other witnesses, tending to prove declarations of Levi Metz, while in possession of the premises, in connection with his acts and proposed acts of ownership, which was offered in reply to the testimony introduced by plaintiffs to qualify the character of his possession. 3. Because there was no competent testimony on the part of the plaintiffs to rebut the presumption of title in favor of the defendant, Levi Metz, from his twenty-eight years of quiet, peaceable, and exclusive possession. This motion being overruled, counsel for defendant bank then argued to the Court that from the evidence of possession in the defendant, Levi Metz, for the period of twenty-eight years, the Court should find that said Levi Metz had in some way acquired a good and sufficient title to said premises prior to the levy and sale thereof under defendant's execution.

His Honor thereafter filed the following decree, excepting the formal parts:

This is an action brought by Austin Metz *et al.*, alleging that they are the owners in fee, as the heirs of Elizabeth Metz, with the defendants, Levi Metz and John A. Metz, of two tracts of land in Lexington County and one tract in Richland County, said State, specifically described in the complaint; that the defendant, W. H. Lyles, had bid off the Lexington lands at the sale of the interest of Levi Metz therein, at Lexington, S. C., on salesday in November, 1895, under execution in the case of Levi Metz *v.* the Commercial Bank of Columbia, S. C., and on same day, in the city of Columbia, the defendant, John A. Metz,

had bid off the Richland lands at a sale under said execution; and that the defendant, Sallie Gibson, claimed some interest therein by way of mortgage, and pray for judgment for partition of said lands among the parties in interest. The defendants, the Commercial Bank of Columbia, S. C., and W. H. Lyles, deny all the allegations in the complaint except the ninth paragraph; say that the bids by W. H. Lyles were made by him as attorney for the Commercial Bank of Columbia, S. C., and before the trial of the cause, the said defendant bank will have title to all the lands in question; and they further allege that the defendant, Levi Metz, owned the lands described in the complaint in fee; that the plaintiffs have no interest or title therein, and pleaded the statute of limitations. The defendant, Sallie Gibson, admits that she holds a mortgage covering said lands, executed by the defendant, Levi Metz, on the 17th day of September, 1894. The defendants, Levi Metz and John A. Metz, do not answer.

The case came on to be heard before me, at the February term of Court, 1896, for Lexington County, as an equity cause. Upon notice of plaintiff's attorneys, the following issues of fact were ordered to a jury: 1. Was Elizabeth Metz seized of any estate in the lands in question, at the time of her death, or in any of them? 2. If so, what estate did she hold? 3. Has the defendant, Levi Metz, acquired title to the lands in question, or any part of them, by purchase, except his distributive share, since the death of Mrs. Elizabeth Metz? 4. Has the possession of Levi Metz of the lands in question, or any of them, been adverse to the plaintiff, or any of them? 5. If so, for what length of time has such possession continued? The jury, after hearing the testimony, full argument on both sides, and the charge, answered the questions as follows: To No. 1 they answered "Yes." To No. 2 they answered, "Absolute." To No. 3 they answered, "No." To No. 4 they answered, "No." To No. 5 they made no answer, as the other answers dispensed with an answer to that question. Immediately upon the publication of the verdict, Mr. Lyles made a motion for a

new trial. A consent order was then taken, providing that the remaining issues in the cause, including the motion for a new trial, should be heard by me at chambers in Columbia, after the jury trials on civil side of Richland Court. The case came before me by agreement at chambers in the city of Columbia, on the 1st of May. Mr. Lyles, for the Commercial Bank of Columbia, S. C., first moved for a new trial upon the ground that the stenographer's notes of testimony were misplaced, and he could not get the testimony for the hearing, which motion was overruled. He then moved for a new trial upon the ground that it was error on the trial before the jury to exclude the testimony of the witness, Rauch, and probably other witnesses, tending to prove declarations of Levi Metz, while in possession of the premises and when about to erect a house on them, to the effect that he was holding the lands adversely to the plaintiffs, and desired to await the maturity of the statutory bar before erecting the house, the evidence being offered in reply to declarations of the said Levi Metz offered by the plaintiffs to prove that he held the lands as property of the estate of Elizabeth Metz. The declarations offered by the defendant were not a part of any conversation or declaration of Levi Metz introduced by the plaintiffs, nor were they explanatory of any act of his proven or relied upon by them, and I therefore ruled them out, upon the ground that admissions against the interest of the party are admissible, but those in his favor are not, unless being a part of the conversation referred to or proven by the other side. I am of opinion still that that is the correct rule. Besides, the defense relied upon the statute of limitations to perfect the title in Levi Metz by adverse possession; but they offered no evidence showing an ouster of the other heirs of Elizabeth Metz, nor was there any such testimony in that ruled out, and without proof of ouster this testimony could not have benefited the defendant. The motion for a new trial is, therefore, refused. After hearing argument of counsel on a motion for a new trial in the cause, and no sufficient

reason having been shown to disturb the findings of the jury, I therefore approve of said findings of the jury and refuse the motion. I find that the plaintiffs and the defendant, Levi Metz, and John A. Metz are the lawful heirs of Elizabeth Metz; that she died seized in fee and possessed of the lands described in the complaint; and that the plaintiffs and the defendants, John A. Metz, and the Commercial Bank of Columbia, S. C., which owns the interest of Levi Metz, are the owners in fee of the lands described in the complaint as tenants in common.

From this decree, the defendant, Commercial Bank of Columbia, S. C., appeals on the following grounds:

1. Because the Court refused to allow defendant's witness, E. T. Rauch, to testify to the conversation between Frank Shelton, one of the plaintiffs in this case, and Major Meetze, eighteen or twenty years before the trial.

2. Because the Court refused to allow said defendant to reply to proofs of declarations of Levi Metz, introduced by plaintiffs, to qualify the character of his possession, to prove by the witness, E. T. Rauch, other declarations of said Levi Metz, made in connection with acts and proposed acts of ownership.

3. Because the Court refused to allow the said witness, E. T. Rauch, to give to the jury his answer, written in the presence of the Court, as to the reasons stated by Levi Metz for his delay in completing the house erected by him on the land in dispute, which declaration was offered in reply to said declarations of said Levi Metz, proven by plaintiffs to qualify his possession.

4. Because his Honor, upon motion of plaintiffs' counsel, against the objection of counsel for defendant, struck out that portion of the answer of the witness, Hyler, which stated that the defendant, Levi Metz, had had possession of the lands in question as embodied in the following question and answer, to wit: "Q. How did he act towards the land— what were his acts? A. His acts, as far as I know, he re-

ceived the rents of the land that I know anything about, and he had possession of it and paid taxes."

5. Because his Honor, upon objection of plaintiffs' counsel, refused to allow the witness, E. A. Bouknight, to answer the following question, to wit: "Q. How was this land known in that community since the death of Mrs. Elizabeth Metz—what was the common report as to the ownership of this land?"

6. Because his Honor, the presiding Judge, refused to allow the witness, G. S. Balentine, to testify to declarations of the defendant, Levi Metz, in conversations had with him in reference to the purchase of timber on said land, which were offered in reply to declarations testified to by plaintiffs' witness with reference to such timber.

7. Because his Honor, the Circuit Judge, refused, upon objection of plaintiffs' counsel, to allow the witness, G. W. Jacobs, to answer the question: "Did you ever have a conversation with Squire Metz about purchasing timber on this place up here?"

8. Because his Honor, the presiding Judge, after having stated the claim of plaintiffs thus, "This is how plaintiffs contended that Levi Metz came in possession of the lands— after having consulted with Mrs. Jumper, that they agreed not to put it on the market to sell at that time, but to let it grow up in pines, as it would bring a better price," charged as follows, to wit: "If these be the facts under which he entered in possession, that was not adverse possession;" notwithstanding the fact that the alleged verbal agreement had occurred twenty-eight years before the commencement of the action, and defendant's possession had been quiet and exclusive since that period.

9. Because, notwithstanding the quiet, peaceable, and exclusive possession of the defendant, Levi Metz, for more than twenty-eight years before the commencement of the action, his Honor charged the jury as follows, to wit: "Whether they" (the heirs of Mrs. Metz) "were actually in possession or had the right to go in possession makes no

difference; if they all had the right to go in possession un-
der Mrs. Metz at her death, they are tenants in common;
each had the right to go there and had an interest in every
grain of sand upon the premises. Having that interest,
each had the right to go upon every grain of sand, and his
title would not be held adverse until he went there and
excluded the others from going there."

10. Because, notwithstanding the peaceable, quiet, and
exclusive possession of the defendant, Levi Metz, for more
than twenty-eight years of the land in question, his Honor
charged the jury as follows, to wit: "But if there was no
adverse assertion, if there was no ouster—that is, one bro-
ther putting another brother out, saying you have no right
to these premises, it is mine, I am here and I am owner—
that would be the beginning of adverse claim."

11. Because his Honor, the presiding Judge, in effect
charged the jury, notwithstanding the claim of the defend-
ant, Commercial Bank, based upon the long, peaceable, and
exclusive possession of the defendant, Levi Metz, that unless
such possession was shown to be adverse in character, no
title would accrue by lapse of time to said Levi Metz.

12. Because his Honor charged the jury as follows, to
wit: "Did he claim to them, or hold out to the world that
they had no right or interest in the property, if not, if he
entered quietly, peaceably, with their permission, it would
not ripen into adverse title unless he had put them on notice
that he held adversely to them."

13. Because his Honor charged the jury as follows, to
wit: "In other words, that title, which started with permis-
sion of the joint tenants, would never ripen into adverse
possession unless the rights of the joint tenants or coten-
ants have been disputed, and that fact brought home to
his knowledge for a·period of ten years, I charge you, if he
was in possession for ten years, he would get title, or in ad-
verse enjoyment for twenty years, the law would presume
he had a grant from the State of South Carolina."

14. Because he further charged: "This adverse feature of

it is not that you are in possession, cultivating, tilling it, but adverse possession, denying the rights not only to these people, but to the world, that would then ripen into title; having held in this way for twenty years the law would presume that the State of South Carolina had given him a grant."

15. Because his Honor charged: "To exclude one co-tenant is not sufficient, must exclude the whole before your title can ripen into adverse title."

16. Because his Honor charged the jury as follows: "In other words, if you find the plaintiffs and the defendant, Levi Metz, acquired title through the common source, Mrs. Elizabeth Metz, and the defendant ousted them of the possession, and they were ousted for the statutory period of ten years, or for a period of twenty years, which would presume a grant, if so, he would not acquire title as against them even if he went in permissively, but held adversely to them, he would have acquired title."

17. Because his Honor charged the jury as follows, to wit: "That defendant must show that they have a prior grant to that of Mrs. Elizabeth Metz, or that they held adversely to the parties claiming under that grant for a period of ten years, or that they held adversely for a period of twenty years, in which case the law would presume that they had a grant."

18. Because his Honor refused defendant's first request to charge the jury as follows, to wit: "That if the jury believe that Levi Metz was in peaceable and quiet possession of the land in dispute, openly and notoriously, for twenty years prior to the commencement of this action, they should presume that he had a good and sufficient title to the land, and should so find," which his Honor only stated that he refused for the reason that the possession, to presume a grant, must not only be peaceable and quiet, but adverse.

19. Because his Honor, the Circuit Judge, refused defendant's motion for a new trial, based upon the ground that it was error to exclude the testimony of the witness, Rauch,

and others tending to prove the declarations of Levi Metz
while in possession of the premises and when about to erect
a house on them, to the effect that he was holding the lands
adversely to the plaintiffs.

20. Because his Honor refused said defendant's motion
for a new trial, based upon the ground that there was no
competent testimony to rebut the presumption of title in the
defendant, Levi Metz, arising from his quiet, peaceable, and
exclusive possession of the land in dispute for twenty-eight
years.

21. Because his Honor, the Circuit Judge, did not find
from the peaceable, quiet, and exclusive possession of said
Levi Metz for twenty-eight years that he had acquired title
to the land in dispute by deed or other lawful means.

22. Because his Honor concluded that the plaintiffs are
entitled to any interest in said premises.

23. Because his Honor decreed partition of the lands in
dispute.

*Mr. W. H. Lyles*, for appellant, cites: *Declaration accompanying act, in reply:* 2 Hill L., 438; 16 S. C., 132; 18 S.
C., 494; 27 S. C., 349; 36 S. C., 598. *Title by adverse possession and presumption:* 159 U. S., 453; 20 U. S., 102; 8
Pick., 504; 2 Rich. L., 22; 14 S. C., 103; 2 McM., 436; 2
Hill, 592; 3 Strob., 500; 3 Peters, 52; 40 S. C., 168; 48 S. C.,
28; 44 Hem., 507; 96 N. C., 164; 3 Watts, 167; 38 Mo., 561.

*Mr. C. M. Efird*, contra, cites: *Declarations of party in
possession:* 3 McC., 222, 260; 4 McC., *262; 1 Bail., 113; 1
Bail. Eq., 482; 2 Bail., 461; 1 Hill Eq., 11; 2 Hill, 487;
Harper, 374; Dudley, 177; 1 Speers, 163; 2 N. & McC., 596;
2 Strob., 141; 2 Rich. L., 176; 5 Rich. Eq., 128; 6 Rich. L.,
306; 1 Hill Ch., 13; 9 Rich. L., 454; 16 S. C., 132; 18 S.
C., 489; 23 S. C., 342; 27 S. C., 349; 29 S. C., 333; 36 S.
C., 598. *Ouster:* 21 S. C., 511. *Title by presumption:* 40
S. C., 178.

*Mr. John McMaster*, also contra, cites: *Declaration of*

*party in possession in favor of title not admissible:* 14 Gray, 504; 8 Allen, 100; 7 Gray, 174; 1 Allen, 77; 5 Rich., 374; 18 S. C., 489.    *Ouster:* 21 S. C., 511; 1 Strob. Eq., 393.

March 15, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE.    The Commercial Bank, a corporation under the laws of this State, having obtained a judgment against its codefendant, Levi Metz, caused the sheriff, under writs of *fieri facias*, to sell as the property of the said Levi Metz, two tracts of land, one of which contained 1,210 acres, situate in Lexington County, in this State, and the other containing 226 acres, situate in Richland County, in this State, on salesday in November, A. D. 1895, and both of said tracts of land were purchased by the defendant, the Commercial Bank.    On the 16th day of November, 1895, an action was commenced in the Court of Common Pleas for Lexington County by the plaintiffs above named against the defendants above named, wherein it was alleged that of the 1,210 acres of land, situate in Lexington County, a tract containing 483 acres, and another tract containing 109 acres, and also the entire tract containing 226 acres, situate in Richland County, were not wholly owned by the said Levi Metz, but that, on the contrary, the said Levi Metz only owned a one-sixth part thereof, because it was alleged that said three parcels of land were owned in fee simple by Elizabeth Metz in her lifetime, and that when she died intestate in the year 1867, said lands descended to her children, and certain grand-children, as tenants in common, and that said lands remained for partition between such children and grand-children, as owning five-sixths thereof, and the defendant, Commercial Bank, as owning the remaining sixth, which had belonged to Levi Metz.    The defendant, Sallie Gibson, was made a defendant, because it was alleged that she held a mortgage on the Lexington lands, executed by Levi Metz.    None of the defendants made answer except the Commercial Bank, and by its answer it denied that Sallie Gibson held any mortgage on the said lands, and also

31—48

denied that the plaintiffs and the defendant, other than itself, had any interest or estate in said lands whatsoever; but, on the contrary, that when it purchased the same as the property of Levi Metz, in November, 1895, he was the owner of all of said lands in fee simple, pleading the statute of limitations of ten years absolute, exclusive, and adverse holding and ownership by said Levi Metz, and also the presumption of a grant of said lands to said Levi Metz, arising from his posession, open, notorious, and adverse, for the period of twenty years preceding this suit.

The cause came on for trial at the February, 1896, term of the Court of Common Pleas for Lexington County, before his Honor, Judge Ernest Gary, who ordered these issues to be tried before a jury: "1. Was Elizabeth Metz seized of any estate in the lands in question at the time of her death, or in any of them?  2. If so, what estate did she hold?  3. Has the defendant, Levi Metz, acquired title to the lands in question, or any part of them, by purchase, except his distributive share, since the death of Mrs. Elizabeth Metz?  4. Has the possession of Levi Metz to the lands in question, or any of them, been adverse to the plaintiffs, or any of them?  If so, for what length of time has such adverse possession continued?"  Testimony was submitted by both sides, and, on objection, certain testimony was ruled inadmissible.  Certain requests to charge were submitted by defendants—one of which was refused.  After the Judge's charge to the jury, a verdict was rendered for the plaintiff on all the issues.  The defendant bank moved for a new trial, which was refused.  The Circuit Judge then heard the case on the equity side of the Court, rendering a decree in favor of the plaintiff.  The defendant bank now appeals, presenting twenty-three exceptions.  Let the order denying motion for a new trial, the decree of the Circuit Judge, and the exceptions, be reported.

We will consider these exceptions in this order.  So much of the Circuit decree as affects the tract of land lying in Richland County, in this State, is not appealed from, and,

therefore, is final. First. Was there reversible error in the rulings of the Circuit Judge as to certain testimony offered by the defendant? Second. Did the Circuit Judge err in refusing a request to charge? Third. Did the Circuit Judge err in his charge to the jury, as complained? Fourth. Did the Circuit Judge err in refusing the motion for a new trial? Fifth. Did the Circuit Judge err in his decree?

First. (*a*) This exception, being the first, relates to the refusal of the Circuit Judge to allow E. T. Rauch to testify as to a conversation between plaintiff, Frank Shelton, and his attorney, Major Meetze, in relation to the lands. We do not understand from the "Case" that the Circuit Judge laid any restriction upon so much of the testimony of this witness as detailed what was said by Frank Shelton; he did refuse to allow him to testify what was said by Major Meetze, and in this particular the Circuit Judge was justified by the law, because whatever Major Meetze may have said, in the connection as detailed by the witness, would have been "hearsay." No harm, however, resulted from this ruling of the Circuit Judge, for just afterwards this witness stated fully that Frank Shelton told Catherine Jumper in his presence what Major Meetze had said in that conversation.

(*b*) A more serious question is presented in the second exception: Let us state the facts clustering about this matter. The plaintiffs had introduced the admissions of Levi Metz to several witnesses as to how he held these lands. Catherine Jumper testified that her brother, Levi Metz, soon after the death of their mother, Elizabeth Metz, told her that he would hold the lands for her (Elizabeth Metz) heirs, taking the rents to pay the taxes, as money was scarce, &c., and, also, a year or two after the conversation held in 1867, Metz had repeated this statement. The witness, *Caleb Metz*, said that not long after the death of Elizabeth Metz, Levi Metz told him that he had seen the heirs; that owing to the scarcity of money and the consequent low price of lands, his mother's estate

lands would not be sold, that he was to stay there and work the lands and pay the taxes. The witness, *Paul Lowman*, had said, in effect, that he had rented some of these lands from Levi Metz after his mother's death, and that in the year 1868 or 1869 he had asked Levi Metz to sell him 100 acres of land, but that Metz replied: "No, I can't make you good title for it, on account of belonging to the heirs." The witness, *J. W. B. Lever*, had testified that not many years before he had offered to buy timber from Metz where he then lived. He replied: "It belonged to other parties; that other parties were concerned with it, and could not dispose of it." The witness, *J. L. Richardson*, had testified that about 1881 or 1882 he had proposed to buy an acre or two from Levi Metz, and Metz told him that he was not able to give good papers for it, that it belonged to his mother's estate. All this testimony was admitted by the Circuit Judge, upon the ground that it was competent to prove the admissions of a party against his interest. Now, when the defendant opened its case, it was desired to prove the declarations of Levi Metz in connection with his acts and proposed acts of ownership of the land in question, in reply to the testimony of plaintiffs, tending to qualify the character of Levi Metz's possession of these lands. These declarations of Levi Metz were, admittedly, no part of his admissions as proved by plaintiff's witnesses. On the contrary, they were entirely distinct therefrom. Nor was this testimony offered to prove bald and naked declarations by said Levi Metz, but were directed to another and very distinct object, namely, testimony as to declarations accompanying acts or proposed acts of Levi Metz as to these lands. In addition, this testimony was offered in *reply* to that offered by the plaintiffs.

To bring this issue up squarely, in regard to the testimony of this witness, E. T. Rauch, we quote from the "Case." Mr. Lyles, as defendant's attorney, asked: "How about his building a house—in what year was the house built?" Ans. "The latter part of 1877 or the first of 1878.

I remember well about his building the house, and a conversation me and him had. He had a lot of lumber in 1875. I wanted to build a barn. He had a lot of lumber that had been there eight or ten years. I wanted to buy that lumber to build a barn, and he told me he would not sell it, that he counted on building a house to live in. I said, 'Squire, the lumber is rotting, and when you get ready to build you can get other. I will pay you what it is worth; and he said'— The Court: That is a declaration of a party in his favor now. Objection sustained. Exception noted." Thus it was made manifest that the declaration of Levi Metz objected to was one accompanying an act or a refusal to act. The Circuit Judge sustained an objection to it. Was this error? The object of all judicial investigations is the ascertainment of the truth of a matter involved in an issue between parties to litigation, and as was said by the Circuit Judge in the case of *Ellen* v. *Ellen*, 16 S. C., 135, where an investigation of a man's possession of land is concerned: "It is difficult to conceive how the character of a man's possession of land, whether in his own right or in right of another, whether adverse or permissive, could ever be proved unless it be by his acts, and words accompanying such acts, while in possession and occupancy. As explanatory of that possession, we think, as part of the *res gestae*, they are as admissible for as well as against one claiming under and through the alleged adverse possession." In the case just cited, the question was squarely presented to this Court, whether *in reply* such testimony of declarations accompanying acts of ownership while in possession was competent, and the Court answered it in these words: "The third and fourth exceptions question the competency of certain declarations of David Ellen, while he was in possession, sustaining his title to the land. It is a general rule that declarations of persons in possession of land, explanatory of the character of their possession, will be admitted in disparagement of their title as original evidence, and Mr. Greenleaf says: 'There can be no reason why every

declaration accompanying the act of possession, whether in disparagement of the claimant's title or otherwise qualifying his possesion, if made in good faith, should not be received as part of the *res gestae*, leaving its effect to be governed by other rules of evidence.' In *Turpin* v. *Brannon*, 3 McC., 361, such declarations were admitted. In *Martin* v. *Simpson*, 4 McC., 262, a case of trespass to try title, such declarations were admitted, on the ground that the character of every act must be determined by the circumstances attending it. The words and actions of the actor constitute a part of a thing done, and is necessary to its explanation, said the Court. The same doctrine is held in several other cases in our own State, not necessary now to be referred to." But upon a different ground a new trial was granted in the case from which we have just quoted, and will be found in 18 S. C., 489. At page 494, this Court held: "Third. 'As to the admission of the declarations of Davin Ellen, in reply, rebutting testimony of defendant as to David Ellen's declaration in disparagement of title by adverse possession.' This Court held in the former appeal in accordance with the doctrine laid down in 1 Greenleaf Evidence, 109, and in our own cases of *Turpin* v. *Brannon*, 3 McC., 266, and *Martin* v. *Simpson*, 4 McC., 263, that such declarations were admissible when they accompanied an act and was explanatory thereof." In *Boozer* v. *Teague*, 27 S. C., at page 367, Mr. Justice McIver, in delivering the judgment of this Court, said: "Again, it is urged that the Circuit Judge erred in permitting respondent to prove declarations of John D. Boozer, under whom she claimed, as to his claim to the land after his mother's death. It will be observed that these declarations were not offered in support of John D. Boozer's title to the land, but simply to rebut the testimony offered by defendants that he had never set up any claim to the land after his return from exile, as well as to explain his acts of taking possession of the land, and for these purposes the testimony was competent." In *Wingo* v. *Caldwell*, 36 S. C., 598, Mr. Justice Pope, as the organ of the

Court, said: "There can be no doubt of the correctness of appellant's claim, that our decisions fully sustain the doctrine that declarations in favor of one's own title are not admissible in support of such title. As we gather from the 'Case,' the defendant not only sought to prove a gift by parol accompanied by possession thereunder, but also by at least three witnesses, to introduce testimony as to declarations made by J. B. Davis subsequent to 1868, the date of the verbal gift. The plaintiff, in reply, proved by Mrs. Deane other declarations of the said J. B. Davis connected with his acts or proposed acts. This was not error," citing cases in support thereof. We think the Circuit Judge erred in not admitting this testimony. Surely, when a man of intelligence has been in the uninterrupted possession of lands for twenty-eight years, and when the title of such holder is sold by the sheriff to pay his debts, and his ownership of such lands is assailed by members of his family on the ground of admission, by such apparent owner in disparagement of his title, it is competent to prove declarations accompanied by acts or refusals to act in reply to such proofs by the plaintiffs here. The present Chief Justice pointed out the true line in *Boozer* v. *Teague*, *supra*, when he said: "It will be observed that these declarations are not offered in support of John D. Boozer's title to the land, *but simply to rebut testimony of the defendant.*" So in the case at bar, where Levi Metz occupied and enjoyed these lands without molestation from any one, under the law a title—a grant—to the land would be presumed, and to negative the presumption of a grant, the plaintiffs, to bolster their alleged titles, offer testimony as to admissions in disparagement of his title by Levi Metz, and now, in reply, "*to rebut* the testimony*" of these plaintiffs, it is attempted by the defendant bank to show by testimony that Levi Metz made other declarations accompanied by acts utterly inconsistent with those declarations testified to by plaintiffs' witnesses. This error of the Circuit Judge will necessitate a new trial.

Under the views just presented, exceptions three, six, and seven are sustained.

As to the fourth exception, we think the question as to possession of those lands by Levi Metz, as testified to by the witness, Hyler, was competent. If the witness knew that fact of possession, we do not see why he might not have stated it in his testimony.

As to the fifth exception, which complains of error in the Circuit Judge in refusing to allow defendant's witness, E. A. Bouknight, to testify as to how that land was known in the community as to the ownership thereof, we think the Circuit Judge committed no error. Questions of title to land cannot be tried in any such way.

Second. Exception eighteen suggests error in the Circuit Judge for declining to charge defendant's first request, which was in these words: "That if the jury believe that Levi Metz was in peaceable and quiet possession of the land in dispute, openly and notoriously for twenty years prior to the commencement of this action, they should presume that he had a good and sufficient title to the land, and should so find." The Circuit Judge declined to make the charge, as requested, for the very good reason that the *adverse* holding for the twenty years was omitted. Without enlarging upon the necessity for the holding for twenty years to be *adverse* in order to presume a title, we announce that such is the well recognized rule of law in this State. From this it will be readily seen that the Circuit Judge committed no error here.

Third. As to the eighth exception. When the Circuit Judge stated the claim of the plaintiff to be that, upon the death of Mrs. Elizabeth Metz, in the year 1867, Levi Metz agreed with his sister, Catherine Jumper, that it was better not to sell the lands at that time, but for him to hold them for the coming of better times, when the lands would sell for their value, and that she concurred in this view, it seems to us that, unless this *status* of these tenants in common was altered after that time, the holding

was not adverse to Mrs. Catherine Jumper.   It would have
been a *permissive* holding as to her.   It would have been
safer for the Circuit Judge to have limited his remark to
Mrs. Catherine Jumper, if there was no testimony that this
agreement by Levi Metz extended beyond her.   As we will
have occasion hereafter to show, it is held under our law
that the presumption arising from the adverse possession
for twenty years may apply as a bar to one or more tenants
in common, and not to other tenants in common.   The
law requires vigilance, and does not screen or protect indif-
ference in the assertion of one's right of property.

Now let us examine the fifteenth exception.   His Honor,
the Circuit Judge, in his charge to the jury, used this lan-
guage: "To exclude one cotenant is not sufficient, (he) must
exclude the whole before your title can ripen into adverse
title."   Title to lands are derived in two ways—by pur-
chase or by descent.   In the case at bar, the plaintiffs claim
title by descent.   If one has a valid title to land, it makes
no difference, in the eye of the law, by which method—
purchase or descent—he attains such title.   We mean that
one source is esteemed as good as the other.   A title to land
by descent, as amongst the tenants in common, entitles
each one of said tenants in common to go upon the whole
of said land, for, until a partition thereof, each tenant is
seized thereof *per my et per tout*.   But if any one of such
tenants in common occupies the entire tract of land, *for
the period of twenty years*, adversely, continuously, and
openly to the other tenants in common, the law will pre-
sume, at the end of twenty years, that he has acquired title
from the State and every other person in interest; and such
ownership will be referred to the beginning of such posses-
sion.   Not so, however, in the case of adverse possession of
ten years, under the statutes of limitation.   Whenever a
man, in possession of lands for ten years, is sued for the
possession of such land by the true owner, he pleads in bar
of the true owner's right that he has been in the open, no-
torious, adverse, and continuous possession of such land for

ten years just before suit brought, and if these facts are established, then our statute of limitations provide that the true owner is barred of his recovery of such lands. Thus it is seen that the person who invokes the statute of limitations was not the true owner of such lands when he entered upon the same; he was, in fact, a trespasser when he entered, and his possession was a trespass from the entry to the expiration of the ten years; but at the expiration of the ten years the statute provides that the true owner has lost his right of action for the possession of such lands. It is plain that this statute of limitations admits that the title was not in the trespasser; it only denies any right of action against such trespasser after the ten years. So it is when a man pleads the statute against a debt; he owes the debt even after the statutory period, but the law says, although the debt is owing, no right of action for its recovery shall be had after a certain period of time. Now, if any disability, such as coverture, infancy, and such like, can be interposed against the currency of the statute of limitations, even if the statutory period has elapsed, the bar of the statute is arrested. Take, for instance, a tract of land owned by tenants in common, one of whom is a minor or a married woman, if a trespasser should get possession and hold the same openly, continuously, adversely for ten years, such trespasser could not successfully interpose the bar of the statute of limitations when an action was brought against him, and this would allow the tenants in common who were not minors or married women to prevail against the trespasser, because the trespasser never had title to these lands, which were seized *per my et per tout* by the tenants in common. However, the case is quite different when it is sought, after twenty years of open, notorious, continued, and adverse possession of lands, to recover by persons holding a paper or other title; the man in possession for twenty years, the fact of such possession being open, notorious, continued, and adverse, the law presumes he obtained title at the commencement of his possession. And while this

presumption is arrested as to infants or persons under other disability, such as coverture, it does so because it cannot presume that an infant or married woman made a deed. Hence the said presumption arising from the twenty years only operates in favor of the one in possession against such persons as were *sui juris*.   This Court, in the very recent case of *Garrett* v. *Wineburg et al.*, *ante*, p. 28, in a carefully considered opinion prepared by Mr. Justice Eugene B. Gary, has set this matter at rest, basing its conclusions upon the cases of *Hill* v. *Saunders*, 4 Rich., 531; *Wadsworthville* v. *McCully*, 11 Rich., 430, and *Trustees* v. *Jennings*, 40 S. C., 183.   We think, therefore, when the Circuit Judge failed to point out this distinction between cases under the statute of limitations and presumption arising from twenty years possession, etc., so far as an ouster of *one* or *more* of the heirs at law of Elizabeth Metz might affect the rights of the person or persons so ousted, without necessarily preventing a recovery of any one or more of such heirs at law who were not ousted, he committed an error.

As to the other exceptions to the charge of the Circuit Judge, it may, possibly, be better not to discuss them; there must be a new trial here, and this charge of the presiding Judge will not be before the next jury.   Besides, the cases we have cited are, at least two of them, recent, and, no doubt, will furnish a guide without our undertaking to say any more at this time.

Fourth. It is useless to discuss the alleged errors of the Circuit Judge in overruling the motion for a new trial.   We have held, hereinbefore, that the Circuit Judge was in error as to his refusal to admit certain testimony offered by the defendant bank, and as these matters were presented as a basis of the motion for a new trial, of course the overruling of this motion was error.

Fifth. As to the alleged errors in the decree, we need not discuss them for the same reasons advanced under the fourth division.

It is the judgment of this Court, that the judgment of the

Circuit Court be reversed, except as to lands in Richland County, and that this cause be remanded to the Circuit Court for a new trial, except as to the tract of land lying in Richland County.