COLEMAN v. COLEMAN.

PRESUMPTIONS—OUSTER.—ONE COTENANT conveys entire fee to A. and her children, A. conveyed entire fee to B., who with his heirs have been in actual exclusive possession for more than twenty years; *held,* that the heirs of B. can not set up the presumption of a deed from the cotenants of the grantor of A. against their cotenants, the children of A., during their minority.

Before GAGE, J., Fairfield, February, 1904. Reversed.

Action by Wm. H. Coleman *et al.* against Martin Coleman *et al.* From judgment for plaintiffs, they appeal.

*Messrs. Ragsdale & Dixon,* for appellants, cite: *Where parties claim from common source, the question is who has better title:* 1 Strob., 1; 22 S. C., 133; 24 S. C., 385; McM. Eq., 157, 345; 26 S. C., 608; 11 S. C., 346. *There can be no adverse possession against minors:* 61 S. C., 276; 1 Hill Ch., 376; 2 Hill Ch., 512; 3 S. C., 254; 48 S. C., 28; 40 S. C., 179; 2 S. C., 20. *Partition of Dawkins' estate is presumed:* Harp., 4; 2 Rich. Eq., 99; McM. Eq., 475; 13 Rich. Eq., 366.

*Mr. J. E. McDonald,* contra, cites: *Plaintiff must connect himself with common source:* 54 S. C., 398. *Defendants are not estopped from showing there is an outstanding title paramount to the common source:* 10 Ency., 2 ed., 491; 11 Ency., 2 ed., 440; 47 Am. St. R., 74; 7 Wheat, 547; 39 Am. Dec., 669; 79 Am. Dec., 191; 43 Am. Dec., 553; 109 U. S., 616; 139 E. S., 682; 1 Strob., 2; 2 Hill, 439; 5 Rich. L., 541; 22 S. C., 81, 137, 451; 25 S. C., 458; 53 S. C., 221; 62 S. C., 563. *Continuous adverse possession for twenty years presumes a grant:* 2 Mill, 420; 2 Rich., 22; 7 Rich., 355; 3

Strob., 500; 40 S. C., 168; 48 S. C., 490; 63 S. C., 159. *Presumption is on same ground as the grant:* 16 S. C., 141; 59 S. C., 448; 63 S. C., 189; 48 S. C., 491.

April 22, 1905.  The opinion of the Court was delivered by

MR. JUSTICE WOODS.  This action was instituted for the recovery of three-fourths interest in a tract of land containing 415 acres, the plaintiffs alleging that the defendants had ousted them and now hold possession of the entire tract. The defendants set up several defenses, but none of them are involved in this appeal except defendants' claim of title by presumption of a deed to them by adverse possession for more than twenty years.  The jury found a verdict for the plaintiffs for three-fourths of one-seventh of the land, instead of the three-fourths of the whole claimed by them. The plaintiffs appeal.

The facts are not in dispute.  The questions of law are difficult and interesting.  Mrs. Martha N. Dawkins inherited the land from her husband, John Dawkins, and remained in possession of it until her death, February 5, 1873.  She died intestate, leaving seven children as her heirs at law.  Her son, John T. Dawkins, who lived with his mother and managed her affairs, held possession of the land until January 13, 1880, when he, disregarding the interests of his brothers and sisters, undertook to convey the entire tract to Mary E. Coleman and her children by a deed in the usual form with general warranty.  There was some testimony to the effect that Mary E. Coleman, with her husband and children, were in the actual possession of the land under this deed until February 15, 1881, when she in turn undertook to convey the entire land by her deed with general warranty to Charles F. Coleman, disregarding the interest of her children.  Charles F. Coleman and his heirs, the defendants, have been in possession since the execution of this deed.  The children of Mary E. Coleman, the plaintiffs, were infants of tender years when these deeds were made,

the youngest not having attained majority until March 19, 1899. This action was commenced July 2, 1903.

The defendants' position is that although they entered under the deed from Mary E. Coleman, and so became tenants in common with the plaintiffs as to the one-seventh interest conveyed by the deed from John T. Dawkins, yet the plaintiffs showed no title to the other six shares belonging to the other children of Mrs. Dawkins, but on the contrary, a deed to the defendants from the other Dawkins heirs would be presumed from their possession of the land, claiming it adversely to these heirs for twenty years, and that the plaintiffs, though tenants in common with them, would have no share in the benefit of this presumption.

The Circuit Judge sustained this position, and the plaintiffs by their exceptions challenge the correctness of the charge in this respect.

Where a defendant does not stand in any relation of trust or obligation to the plaintiff and the plaintiff proves a common source and a title from the common source, it is well established the defendant may then protect himself by showing he has acquired an outstanding title superior to the common source. *Bryce* v. *Cayce,* 62 S. C., 563, 40 S. E., 948.; *Robertson* v. *Pickrell,* 109 U. S., 608, 27 L. ed., 1049.

The questions here are, first, whether the defendants have acquired such superior outstanding title separate from that under which plaintiffs claim, and second, if they have, will they be allowed to assert it against those with whom they stood in the relation of tenants in common.

In trying to answer the first question, it is essential to consider the precise legal relation to the land in which the execution of the two deeds placed the plaintiffs and the defendants, or their father, from whom they inherited. By the deed to Mary E. Coleman and her children from John T. Dawkins, the plaintiffs became infant tenants in common not only with their mother, but with the brothers and sisters of John T. Dawkins. But as they took under a deed purporting to convey not an interest but the entire land, the

claim and possession of themselves and their mother under the deed became immediately adverse to the other tenants in common, and its date was the date of the ouster of the other Dawkins heirs and the commencement of the period of twenty years at the expiration of which a deed from them would be presumed. This .deed would not be presumed to have been made at the expiration of the period of twenty or more years, but at its beginning. Therefore, when the other Dawkins heirs failed to assert title for more than twenty years down to the commencement of this action, it is presumed they conveyed their shares when title was asserted against them by their cotenant, John T. Dawkins, to those who took his title and entered under it. *McLeod* v. *Rogers,* 2 Rich., 22; *Meetze* v. *Meetze,* 48 S. C., 491, 26 S. E., 787. The conclusion seems irresistible, therefore, that the entry and holding of Mrs. Coleman and the plaintiffs, and the subsequent entry and holding of the defendants for more than twenty years, established by presumption a deed to Mrs. Coleman and her children from the other Dawkins heirs when they received a deed from John T. Dawkins; and the defendants, therefore, could not postpone the date of the presumed deed from the Dawkins heirs to the date of the deed purporting to convey the entire tract from Mary E. Coleman to their father. If this view is correct, then it is clear the minority of the plaintiffs would protect their interest as well under the deed presumed to have been made to them and their mother by the six other Dawkins heirs as under the deed actually made by John T. Dawkins.

Let us take, however, another and the most favorable view of defendants' relation to the John T. Dawkins deed. Assume that while the presumption did begin to run against the six Dawkins heirs when John T. Dawkins made his deed to the plaintiffs and their mother, yet that the defendants may support the claim that the presumption at the end of the period of twenty years was not that a deed had been made by these heirs to Mary E. Coleman and her children, the

plaintiffs, but to Mary E. Coleman, defendants' grantor, alone; or even assume, though this seems most illogical, that a deed by the six Dawkins heirs would be presumed to have been made not when they were disseized by their cotenant, John T. Dawkins, but when Mary E. Coleman, his grantee, undertook to convey to the defendants' father.   Under this view, it will not be doubted that defendants' father and the plaintiffs became tenants in common as to the entire land, for neither the deed of their mother nor their actual eviction could have any effect on the interest of the plaintiffs so long as they were minors.   Hence, as against the plaintiffs, the deed of Mrs. Coleman could have no other effect than to place the father of defendants in the same relation to the plaintiffs that she herself occupied.   Not only did she hold as tenant in common with the plaintiffs, her infant children, but her interest was acquired under the same deed.   This being so, could Charles F. Coleman or his children, who succeeded him in the relation of tenant in common with the plaintiffs, set up against them a title acquired by presumption of a conveyance of the other interests in the land?   This question must be answered in the negative, for two reasons.   First, the possession of one tenant in common is constructively the possession of all, and whatever rights are acquired against strangers by possession stand for the benefit of all.   *Scaife* v. *Thompson,* 15 S. C., 337.   After the ouster of the Dawkins heirs, they occupied the relation of strangers, and rights acquired against them by possession belonged to all the cotenants who were not ousted.   As we have seen, neither these defendants nor their father nor Mrs. Mary E. Coleman could deprive the plaintiffs of their full rights as cotenants by eviction or in any other way until they attained majority.   The position that the plaintiffs were cotenants as to only one-seventh of the land is utterly untenable, for under no possible view can it be denied that they had an interest as cotenants with the defendants and their father in every foot of the land during the entire period of the possession.   Second, as a general rule, any title whatever acquired by one cotenant by

actual conveyance, presumption or otherwise, inures to the benefit of all.

In *Van Horne* v. *Fonda,* 5 Johns. Ch., 388, 406, which is recognized as the leading case on this subject, Chancellor Kent says: "In some cases, says Littleton (sec. 307), a release to one joint tenant shall aid the joint tenant to whom it was not made, as well as him to whom it was made. I will not say, however, that one tenant in common may not, in any case, purchase in an outstanding title for his exclusive benefit. But when two devisees are in possession, under an imperfect title, derived from their common ancestor, there would seem, naturally and equitably, to arise an obligation between them, resulting from their joint claim and community of interests, that one of them should not affect the claim, to the prejudice of the other. It is like an expense laid out upon a common subject, by one of the owners, in which case all are entitled to the common benefit, on bearing a due proportion of the expense. It is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject, created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself, and thus undermine and oust his companion. It would be repugnant to a sense of refined and accurate justice. It would be immoral, because it would be against the reciprocal obligation to do nothing to the prejudice of each other's equal claim, which the relationship of the parties as joint devisees created. Community of interest produces a community of duty, and there is no real difference, on the ground of policy and justice, whether one cotenant buys up an outstanding encumbrance, or an adverse title, to disseize and expel his cotenant. It cannot be tolerated when applied to a common subject in which the parties had equal concern, and which created a mutual obligation to deal candidly and benevolently with each other, and to cause no harm to their joint interest." Freeman on Cotenancy and Partition, sec. 154; *Venable* v. *Beauchamp,* 28 Am. Dec., 74, and extended

note; *Brittin* v. *Handy,* 73 Am. Dec., 497; *Rothwell* v. *Dewees,* 2 Black, 613, 17 L. ed., 309; *Carpenter* v. *Carpenter,* 27 Am. St. Rep., 569, and note; *Tanney* v. *Tanney,* 39 Am. St. Rep., 678, and note; *Franklin Mining Company* v. *O'Brien,* 55 Am. St. Rep., 118, note; *Robinson* v. *Lewis,* 10 L. R. A., 101, note; *Barnes* v. *Boardman,* 9 L. R. A., 571, note; 1 Washburn on Real Property, *430; 17 A. & E. Ency. Law, 674. In some cases exceptions to this rule, thus stated in *Keech* v. *Sandford,* 1 L. C. in Eq., H. & W., are recognized: "But tenants in common, probably, are subject to this mutual obligation only where their interest accrues under the same instrument, or act of the parties, or of the law, or where they have entered into some engagement or understanding with one another; for persons acquiring unconnected interests in the same subject, by distinct purchases, though it may be under the same title, are probably not bound to greater protection of one another's interests than would be required between strangers." *Roberts* v. *Thorn,* 78 Am. Dec., 552; *Stevens* v. *Reynolds,* 52 Am. St. Rep., 422. Such an exception is countenanced by the great authority of Mr. Freeman in his work on Cotenancy and Partition (sec. 155), but he seems to regard it with disfavor in his note to *Venable* v. *Beauchamp,* 28 Am. Dec., 74. While we are inclined to think such an exception may be sustained, this case does not fall under it. Here Mary Coleman entered under one deed made to herself and her infant children together. If there ever was a case where the contract and the relation of the parties fixed upon one cotenant not only the general duty implied by that relation but a special obligation to the others, such a case arose when the mother, Mary E. Coleman, became a party with her infant children to this deed. The deed to Charles F. Coleman from her could have no other effect than to place him and those who claim under him in precisely the same relation of special obligation to these plaintiffs, as to the land, so long as they remained minors. The defendants having thus become tenants in common with these infant children, there was no

means by which they could change that relation or shake off the obligation it imposed until the infants attained their majority. The case stands, therefore, just as if Mrs. Coleman had evicted her infant children and then held the exclusive possession for a sufficient time to presume a deed from the six Dawkins heirs covering their aggregate interest of six-sevenths of the land. The defendants being cotenants occupying this special relation of obligation to the plaintiffs, even if the title acquired by Charles F. Coleman and his heirs, the defendants, be regarded a separate title acquired for themselves, it inures to the benefit of the plaintiffs as tenants in common with them.

For these reasons, the charge of the Circuit Judge was erroneous, and the judgment of the Circuit Court is reversed, and a new trial ordered.