### COLEMAN v. COLEMAN.

1. REAL PROPERTY—MORTGAGES—SUBROGATION—SET OFF.—Where a mother takes a deed to herself and children in fee, and gives her individual bond and mortgage on all the land to secure the purchase money, and then sells to another, giving her individual deed purporting to convey the entire fee, her purchaser assuming her bond as part of purchase money, and having paid it, is not entitled to subrogation to rights of original mortgagee as against rights of children. Nor can such purchaser set off against interest of children their *pro rata* share of the purchase money paid the mother more than the said bond represented by bond and mortgage executed to her and paid to her assignee.

   *Hutchison* v. *Fuller,* 67 S. C., 280, *distinguished from this.*

2. SUBROGATION—LIMITATION OF ACTIONS—MORTGAGES.—Party cannot derive any benefit from subrogation to rights of mortgagee in a mortgage barred by statute of limitations.

Before KLUGH, J., Fairfield, February, 1906. Affirmed.

Action by Wm. H. Coleman *et al.* against Martin Coleman *et al.* From order refusing amendment to answers proposed by defendants, they appeal.

*Mr. J. E. McDonald,* for appellant, cites: 16 S. C., 216; 18 S. C., 123; 41 S. C., 337; 62 S. C., 300; 63 S. C., 93; 67 S. C., 451, 280.

*Messrs. Ragsdale & Dixon,* contra, cite: 32 S. C., 142; 43 S. C., 229; 34 S. C., 62; 58 S. C., 554; 52 S. C., 464.

July 23, 1906. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The first appeal in this case involved the question whether the plaintiffs were entitled to recover three-fourths of one-seventh of the land described in the complaint, or three-fourths of the entire tract; and it was decided that they had title to three-fourths of the whole. 71 S. C., 518, 51 S. E., 250. After the case was remanded to the Circuit Court the defendants made a motion to amend their answer and set up certain alleged equities, and this appeal is from an order refusing the motion.

As it is necessary in order to understand this appeal to have in mind the facts on which the former appeal was taken and the precise point then decided, we extract from the opinion the following statement: "This action was instituted for the recovery of three-fourths interest in a tract of land containing 415 acres, the plaintiffs alleging that the defendants had ousted them and now hold possession of the entire tract. The defendants set up several defenses, but none of them are involved in this appeal except defendant's claim of title by presumption of a deed to them by adverse possession for more than twenty years. The jury found a verdict for the plaintiffs for three-fourths of one-seventh of the land, instead of the three-fourths of the whole claimed by them. The plaintiffs appeal. The facts are not in dispute. The questions of law are difficult and interesting. Mrs. Martha N. Dawkins inherited the land from her husband, John Dawkins, and remained in possession of it until her death, February 5, 1873. She died intestate, leaving seven children as her heirs at law. Her son, John T. Dawkins, who lived with his mother and managed her affairs, held possession of the land until January 13, 1880, when he, disregarding the interests of his brothers and sisters, undertook to convey the entire tract to Mary E. Coleman and her children by a deed in the usual form with general warranty. There was some testimony to the effect that Mary E. Coleman, with her husband and children, were in the actual possession of

the land under this deed until February 15, 1881, when she in turn undertook to convey the entire land by her deed with general warranty to Charles F. Coleman, disregarding the interest of her children. Charles F. Coleman and his heirs, the defendants, have been in possession since the execution of this deed. The children of Mary E. Coleman, the plaintiffs, were infants of tender years when these deeds were made, the youngest not having attained majority until March 19, 1899. This action was commenced July 2, 1903. The defendants' position is that although they entered under the deed from Mary E. Coleman, and so became tenants in common with the plaintiffs as to the one-seventh interest conveyed by the deed from John T. Dawkins, yet the plaintiffs showed no title to the other six shares belonging to the other children of Mrs. Dawkins, but on the contrary, a deed to the defendants from the other Dawkins heirs would be presumed from their possession of the land, claiming it adversely to these heirs for twenty years, and that the plaintiffs, though tenants in common with them, would have no share in the benefit of this presumption. The Circuit Judge sustained this position, and the plaintiffs by their exceptions challenge the correctness of the charge in this respect."

This Court held that the presumption of a title from the other Dawkins heirs was in favor of the plaintiffs as well as the defendants, and hence that they were entitled to recover three-fourths of the whole land.

By the amendment now proposed to the answer the defendants ask leave to allege that when J. T. Dawkins conveyed to Mrs. Coleman and the plaintiffs, her infant children, he took a purchase money mortgage from Mrs. Coleman for $1,513.39, receiving no other consideration for his deed; that when Charles F. Coleman, under whom the defendants claim as heirs at law, took Mrs. Coleman's deed for the land, he assumed the payment of this mortgage as a part of the purchase money he agreed to pay her for the land; and that since his death the defendants have

paid this mortgage in full. The allowance or disallowance of this amendment depends on the soundness of defendant's proposition that upon establishing these facts, the plaintiffs in recovering three-fourths of the land from them would be liable in equity to reimburse them to the extent of three-fourths of the sum paid in extinguishment of the mortgage. We do not think any liability of the plaintiffs would result from proof of these allegations. J. T. Dawkins chose to make a deed to Mrs. Coleman and the plaintiffs as cotenants, and take for the purchase money the mortgage here set up from Mrs. Coleman alone; and Mrs. Coleman, on her part, while having the deed made to her children along with herself, chose to assume personal liability and execute a mortgage which could bind only her interest for the entire purchase money. The plaintiffs have never done anything to make themselves liable on the mortgage, and their interest in the land has never been subject to its lien. Dawkins could not have enforced it against them, nor could Mrs. Coleman if she had paid it. On this point the case of *McDonald v. Woodward*, 58 S. C., 554, 36 S. E., 918, is conclusive.

Counsel for defendants in his vigorous argument regarded this case analogous to *Hutchinson v. Fuller*, 67 S. C., 280, 45 S. E., 164, but it is really very different. There Hutchinson owned mortgages given by the father of the infant defendants, constituting liens on their interests. Losing sight of the interests of the children, he took a conveyance from the widow alone and satisfied his mortgages, it being the intention of all parties that he should have a complete title to the land; and it was held in view of these controlling considerations that the mistake should be corrected by restoring the status of the mortgages as they existed before the cancellation, as far as they affected the interest of the children. Here there never was any charge on the interest of the plaintiffs, and the amendment proposed contains no allegation warranting the Court in making one. Possibly Dawkins or Mrs. Coleman or the defendants would have been entitled

to some relief against the plaintiffs, notwithstanding their infancy, under a complaint filed in due time alleging that they had been the beneficiaries of fraud or mistake in the execution of the conveyance and the mortgage. There is, therefore, no principle of subrogation applicable to the facts alleged.

The defendants earnestly insist, however, that they have a strong equity to require of the plaintiffs a *pro rata* contribution to the actual payment of this mortgage by them on the ground that it was due to the holding by them and C. F. Coleman, their father, under whom they claim that the plaintiffs acquired any title against the Dawkins heirs other than J. T. Dawkins. This reasoning is fallacious; for while it is true the title of the Dawkins heirs was defeated by the presumption of a deed from them arising from the possession of the defendants and C. F. Coleman, yet that possession commenced by the wrongful disseizion of the plaintiffs, who were then infants, by C. F. Coleman. The plaintiffs being in possession with their mother under a deed from J. T. Dawkins, one tenant in common, purporting to convey the entire title, were holding the land adversely to the other Dawkins heirs when they were dispossessed by C. F. Coleman. The Dawkins heirs have never set up any title to the land against the defendants, the present occupants, and there is certainly no presumption that they would not have pursued the same course if the plaintiffs had remained in possession. The acquisition of title against the Dawkins heirs is not therefore to be credited to the defendants as a benefit they have conferred on the plaintiffs, but it is a benefit which would have come to the plaintiffs, had they not been disseized, from the inactivity of the Dawkins heirs, without the intervention of the defendants or C. F. Coleman, under whom they claim.

The defendants ask to allege further, that when C. F. Coleman took the deed from Mrs. Coleman, the mother and co-tenant of the plaintiffs, he gave her a mortgage for $1,200, a part of the purchase money which was subsequently

paid by the defendants, "and that the plaintiffs received the
full benefit of the purchase money of said tract of land which
was represented by the bond and mortgage last above men-
tioned." From the foregoing statement of the relations of
the parties it is obvious the plaintiffs' interest in the land
could not be affected by this mortgage, and they were not
personally liable for it. C. F. Coleman by his purchase
acquired only the interest of Mrs. Coleman, and he could not
have mortgaged anything more than that to her. There is,
therefore, no principle of subrogation applicable to this
mortgage. The defendants allege, however, that the plain-
tiffs received the full benefit of the purchase money. This is
a very indefinite statement of a conclusion without the facts
upon which it is rested. If there were some such allega-
tion as that C. F. Coleman took title from Mrs. Coleman sup-
posing it to be good for the whole land and the purchase
money was paid to her under that *bona fide* belief, and then
invested for the benefit of the plaintiffs, who have actually
received it, since their majority, then undoubtedly the de-
fendants would have at least an equity to require them to ac-
count for it. But there is no such allegation, and it would
not be proper to reverse an order of the Circuit Court disal-
lowing the amendment proposed, on the mere possibility that
the benefit to the plaintiffs may be one for which they should
account, rather than a remote and incidental advantage, such,
for instance, as aiding a parent to discharge an obligation
upon them imposed by law, and which it is not presumed she
was unable to discharge without such aid.

For convenience the additional grounds relied on by plain-
tiffs to sustain the circuit decree have been first discussed.

These grounds are: "First, because Mary A. Coleman had
no authority to bind the plaintiffs in executing the mort-
gage to J. T. Dawkins, that plaintiffs were not parties
thereto, and their interests were not bound by the said mort-
gage; secondly, because the plaintiffs were in nowise con-
nected with the mortgage by Charles F. Coleman to Mary

A. Coleman, and their interests in the premises were not affected thereby." For the reasons above stated we think they are well taken.

The Circuit Judge thus expressed his reasons for refusing the motion: "I think the defendants would be entitled to be subrogated to the rights of the holders of the mortgages set out in the proposed additional defense, which it is sought to incorporate in the answer by way of amendment, but from the facts as they are made to appear to me on this motion to amend, these mortgages could not now give the defendant any rights which could be enforced. More than twenty years have elapsed since the maturity of these mortgages and the debts secured thereby, and they are hence barred by the statute of limitations. Moreover, it appears that no entry of any acknowledgment or note of any payment has been made on the record of the said mortgages within twenty years last past, as required by sec. 2449, of the Code of Laws of 1902, and the liens of said mortgages have been extinguished by failure to comply with the provisions of this statute. For these reasons, the proposed amendment, if allowed, would be entirely nugatory, and the motion for leave to amend is therefore refused."

As already indicated, we think the Circuit Judge was in error in holding the defendants entitled to subrogation under the allegations of the proposed amendments. The remaining question relates to the statute of limitations, upon the application of which the Circuit Judge rested his decree. The proposed amendment contains no allegation of fraud or mistake in these transactions. If the claim for subrogation had been set up in due time, the most the Court could have done, and that would be going very far, would have been to declare on proof of fraud or mistake that the mortgage given by Mrs. Coleman should be extended to cover the interest of her children, the plaintiffs, and this mortgage so extended would be now absolutely barred by the statute of limitations; hence subrogating the defendants

to the rights of Dawkins, the original mortgagee, could not avail defendants as to this mortgage.

As to the mortgage given by C. F. Coleman to Mrs. Coleman and paid by defendants to her, according to the allegations of the proposed amendment, as we have seen there is no principle of subrogation on which the defendants could set up this mortgage against the plaintiffs, and therefore the statute of limitations is entirely without application.

Indeed, it is due to defendants' counsel to say that while subrogation is set up as to this mortgage in the proposed amendment, the right to the amendment is not pressed on that ground. The defendants do not seek to foreclose this mortgage against the plaintiffs nor set up any right of subrogation under it, but the purpose of the amendment concerning this mortgage is to require the plaintiffs to pay back money which the defendants claim they paid on the land and of which the plaintiffs had the benefit, as an equitable duty which the plaintiffs ought to be required to discharge before taking from the defendants the land claimed as their own. This claim of right does not depend on the present validity of the mortgage nor even on the existence of the mortgage at any time. The demand is purely equitable and the equity could not reasonably be set up against the rigor of the plaintiff's legal right to possession so long as the defendants were in possession and no claim of possession was made by the plaintiffs. The statute of limitations relating to mortgages therefore has no application. But we have held the amendment so far as it affected this claim was properly disallowed, because the facts alleged were not sufficient to entitle the defendants to require the plaintiffs to account for any portion of the money paid by the defendants on this mortgage.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.