7827

SIBLEY v. SIBLEY.

1. EVIDENCE—TITLE—PRESUMPTIONS—OFFICERS.—That a sale of land was ordered by the Court for partition, and the land bid off, are not sufficient to show title in the bidder, nor can title be inferred from a presumption that the officers of the Court required the bidder to complete the sale, as that was not the duty of the officers but of the bidder.

2. SERVICE OF SUMMONS—MINOR.—Under the law as it stood in 1859, acceptance of service by guardian *ad litem* for minor gave the Court jurisdiction of his property.

3. REAL PROPERTY—ADVERSE POSSESSION—MARITAL RIGHTS.—Where a stepfather goes into possession of a tract of land after bidding it off at a partition sale, without doing anything more to perfect the sale, his possession will not be presumed to be under the partition sale, but under the marital rights of the wife and as tenant in common with his stepchildren.

4. LIMITATION OF ACTIONS—PRESUMPTION—GRANT.—The disability of a cotenant or infancy of one cotenant does not extend to the protection of the interests of the other tenants against the presumption of a grant.

5. REAL PROPERTY—ADVERSE POSSESSION—MARITAL RIGHTS.—Where a husband enters into possession of land under no claim except his marital right, any title acquired by him by such possession inures to the benefit of the wife if she survive him.

Before KLUGH, J., Chester, April term, 1909.    Affirmed.

Action by C. M. Sibley and Rhoda Vaughn against Eliza Sibley, W. F. Adams and Mary Jane Westbrook.    Plaintiffs appeal.

*Mr. J. H. Marion,* for appellants, cites: *Disability of one cotenant does not protect others against presumption of a grant:* 48 S. C. 489, 28; 4 Rich. 521.    *Minor could in 1859 be served by acceptance by guardian:* 3 S. C. 321; 6 S. C. 462; 37 S. C. 346; 56 S. C. 107; 18 S. C. 357; 13 S. C. 93; 5 Rich. Eq. 200; 5 Rich. 200; 4 DeS. Eq. 87; 3 N. & McC. 21.    *Possession under marital right is not adverse to other tenants:* 11 S. C. 74; 21 Cyc. 1157; 1 Hill Eq. 397; 19 Ency. 38; 2 Hill Eq. 541; 48 S. C. 489.

*Messrs. Wm. J. Cherry* and *Arthur L. Gaston,* contra, cite: *Possession by heir of ancestor:* 15 S. C. 269; 26 S. C. 608, 11 S. E. 1091.    *Title may not be proved by reputation:* 48 S. C. 472.    *Does disability of one cotenant inure to benefit of others against the presumption of a grant?* 41 S. C. 534; 17 S. C. 489; 1 Green. Ev., secs. 20, 41; 58 S. C. 392; 22 Ency. 1238; Wood on Lim. 507; 77 S. C.

129; 53 S. C. 137; 2 Hill Ch. 543, 644; 21 Kent Com.
130; 95 A. D. 181; 40 S. C. 181; Wood on Lim., sec. 266;
48 S. C. 293; 26 S. C. 186. *Service on minor cannot be
made by acceptance by guardian ad litem:* 3 S. C. 322;
6 S. C. 459; 45 S. C. 334.

March 17, 1911. The opinion of the Court was deliv-
ered by

MR. JUSTICE WOODS. In this action, involving the title
of a tract of land containing seventy-four acres, the defend-
ants W. Frank Adams and Mary Jane Westbrook claim
two-thirds interest in the disputed land as heirs of their
father Abram Adams, who died in 1856, leaving as his
heirs at law his widow Eliza Adams, and his children
by her, W. Frank Adams and Mary Jane Adams, who
afterwards married J. A. Westbrook. The plaintiffs claim
two-thirds interest in the land as the heirs at law of Charles
R. Sibley who married the widow of Abram Adams in the
latter part of December, 1859, and died on the 17th of
November, 1906, leaving as his heirs at law his widow
Eliza Sibley and his children by her, C. Marshall Sibley and
Rhoda Vaughn. The widow Eliza Sibley has no interest
in the controversy; for it is admitted that she is entitled to
one-third of the land as widow, whether it be adjudged to
belong to the heirs of Adams or to the heirs of Sibley.

The action was in form a suit by the plaintiffs to quiet
title, the allegation being that they, with their mother, were
in possession of the land, and that the claim set up by the
defendants, as heirs of Abram Adams, was a cloud on their
title. The cause was tried at the November, 1908, term
of the Court of Common Pleas for Chester county, and
resulted in favor of the plaintiffs; but the Court set aside
the verdict. On the second trial at the April term, 1909,
the verdict was for the defendants, and the appeal is from
the judgment entered thereon. Some objection was made
to the form of action, but this was waived, and it was

agreed that the question of title should be tried under the pleadings as they stood.

The main question for consideration is whether a verdict for the plaintiffs could follow as a legal result, even assuming all the testimony offered in support of their claim to be true—whether there was any evidence tending to show that Charles R. Sibley ever had title to the land. If there was no such evidence, the errors in the charge set out in the exceptions would be immaterial. The claim of the defendants, the children of Abram Adams, is very simple. No written conveyance to Abram Adams was produced, but the evidence shows beyond dispute that he had bought the land and was living on it with his family when he died in 1856, and that after his death his wife and children lived on it as their own until the second marriage of Mrs. Adams in December, 1859, and after the marriage remained on it for a period long enough to acquire title by adverse possession or the presumption of a grant. If nothing else appeared, of course the title of the heirs of Abram Adams would be complete.

The claim of the plaintiffs is, (1) that Abram Adams' had no title to the land at the time of his death; (2) that if Abram Adams ever had title, Charles R. Sibley acquired it by purchasing the land at a judicial sale on the first Monday of December, 1859; (3) that their father Charles R. Sibley entered into adverse possession in December 1859, and continued in possession up to the time of his death in 1906, and that his adverse possession continued for more than twenty years after the children of Abram Adams had reached their majority and had left the land.

There can be no doubt that the period of the possession of Charles R. Sibley and his wife Eliza Sibley was long enough to give title, not only by adverse possession, but by the presumption of a grant. But in passing upon these allegations of the plaintiffs the important inquiry is whether there is any evidence that Charles R. Sibley entered upon

the land under a deed conveying to him the interest of the heirs of Abram Adams, or under any claim adverse to them, or on the contrary entered in virtue of his marital right to hold and enjoy the interest of his wife.

As evidence of a conveyance of the interest of the heirs of Abram Adams to Sibley and of his subsequent adverse holding, the plaintiffs introduced a record of partition proceedings in the court of ordinary of Chester county, instituted by Eliza Adams against her two infant children. In the judgment roll an order dated November 11, 1859, was found, directing the sale of the land by the sheriff "on the first Monday on December next or on such other sales day as will be most convenient to the parties in interest on a credit of twelve months with interest from day of sale, the purchaser giving bond with good security and a mortgage of the premises if deemed necessary to the ordinary for the payment of the purchase money." The records of the ordinary's office and the sheriff's office afforded no evidence that a sale was ever made. No deed to Sibley was produced, there is no recorded bid, no report of sale, no record of an official deed to the land or of a mortgage for the purchase money, no entry in any official book of the receipt or distribution of any proceeds of sale. No witness was produced who was present at the sale or could testify from personal knowledge that the sale was made. Nevertheless, if the case depended on the inquiry whether there was a sale at which Charles R. Sibley bid off the land, we think there would be an issue of fact to be settled only by the jury; for there was evidence from which it might be inferred that there was a sale and that Sibley bid off the land.

For the purposes of the present discussion, therefore, we must assume that which is most favorable to the plaintiffs, namely, that the sale was made and that Charles R. Sibley bid off the land. Having reached this point, plaintiff's counsel contend that the lack of any direct evidence that Sibley complied with his bid and received title is supplied

by the presumption that the ordinary and sheriff, as public officers, did their duty. But this proposition seems to be clearly unsound. After the land was bid off, compliance with the bid, the condition of obtaining title, was an obligation resting on the bidder alone, and the officers had no duty in his behalf until that condition had been met. Those who claim under a bid at an official sale cannot be allowed to rely on a presumption of compliance with the bid from the mere fact that it was made: presumption of the performance of an obligation does not arise from the making of it. On the contrary, the presumption that officers perform their official duties is fatal to the assertion that a deed of conveyance was made by either of the officers to Charles R. Sibley. Had Sibley ever complied with his bid it would have been the duty of these officers to record the sale, and to take and keep the money or security given for the purchase price, and to pay out the purchase money and keep records of its distribution. The absence of any such records raises the presumption that the bid was not complied with and that no title was made.

It follows that the claim of the plaintiffs that their father Charles R. Sibley acquired title by conveyance under a judicial sale of the land as the property of the heirs of Abram Adams is without evidence to support it.

The Circuit Judge erroneously charged the jury that the infant children of Abram Adams were not bound by the partition proceedings before the ordinary because the record does not give evidence that they were personally served. There was an acceptance of service by the guardian *ad litem* of the infants, who appeared in their behalf, and under the practice then obtaining that was sufficient. *Rollins* v. *Brown,* 37 S. C. 345, 16 S. E. 44. This error in the charge was immaterial, however, for the reason that the sale was never completed and Sibley took no title under it.

The next inquiry is whether there is any evidence that Charles R. Sibley entered under any claim adverse to the widow and children of Abram Adams. The evidence on both sides shows that Sibley married the widow of Adams late in December, 1859, "just before Christmas," while the alleged sale was on the first Monday in December, 1859. He certainly did not undertake to enter before his marriage. At the time of his marriage he had no claim to the land and no relation to it except as the holder of a bid which had not been complied with. Immediately upon his marriage and by virtue of it, the law, as it then was, conferred upon him the right to enter upon and enjoy the land as tenant in common with the children of his wife's former husband. The evidence is that he did enter at his marriage and became the new head of the family. He had not a particle of right to enter except under his marital rights; for, of course, his mere act of bidding off the land carried no right to possession. An entry and claim of right of possession under a bid not complied with would have been a grave legal and moral wrong against his wife and her children. The presumption of law is against an act so vicious, *Habersham* v. *Hopkins,* 4 Strob. 238 ; and hence it must be presumed that the entry was made and the possession commenced in virtue of the right which the marriage conferred, and not in pursuance of a wicked purpose on the part of Sibley to claim the land as his own without having paid for it and without having obtained any title to it. Thus the testimony from both sides and all the presumptions of law leave no room for any other conclusion than that Sibley entered and took possession of the land on his marriage in December, 1859, that at that time he had no claim to possession except his right acquired by marriage, that his entry and possession must be referred to his marital rights, and that upon his entry he became by virtue of his marital rights a tenant for life of a one-third

interest, he and his infant stepchildren holding common possession as cotenants.

The possession having commenced under the legal title, the presumption is that it so continued. Code of Civil Procedure, section 101. *Love* v. *Turner,* 71 S. C. 330, 51 S. E. 101. During the continuance of this possession of the tenants in common, not only that relation, but the special duty which the stepfather was under to protect the interests of his stepchildren while they were minors precluded him from acquiring any title against them by adverse possession or otherwise, *Snowden* v. *Logan,* Rice's Eq. 174; *Coleman* v. *Coleman,* 71 S. C. 518, 51 S. E. 250; 1 Cyc. 1050; and even after the stepchildren reached their majority his possession could not become adverse until after he had ousted them under a claim of exclusive title.

The common possession continued until 1861, when Charles R. Sibley, leaving his wife and her children on the land, went into the Confederate army. It was resumed on his return in 1865 and continued at least until about the time the stepchildren attained their majority.

The evidence tended to show that Mary Jane, who married Westbrook, moved away on her marriage about twenty years before Sibley's death, and that Frank Adams, after going away and returning to cultivate the land with the consent of Sibley, and possibly under some kind of arrangement between them, finally left the land about eighteen years before Sibley's death. The evidence as to ouster and adverse holding before Frank Adams left is very vague and uncertain, but we think it is sufficient to raise an issue of fact on the question whether there was an ouster and adverse holding against W. F. Adams and Mrs. Westbrook for a period which, added to the eighteen years, would be sufficient to make at least the period of twenty years necessary to give rise to the presumption of a deed from Frank Adams and Mrs. Westbrook. "Inaction by tenants in common or any others, claimants to land, for

192　　SIBLEY *v.* SIBLEY.

twenty years in the face of notorious and exclusive possession, with the use and exercise of authority incident to exclusive and adverse ownership, is sufficient to rebut the presumption that possession is in subordination to the legal title, and to establish the presumption of a grant or deed, and almost any other presumption necessary to the protection of the possession." *Powers v. Smith,* 80 S. C. 114, 61 S. E. 222.

On this point the Circuit Judge charged that the disability of coverture or infancy of one cotenant extends to the protection of the interest of the others against the running of the period of time necessary to raise the presumption of a grant. This was, under the decisions in this State, an erroneous statement of the law. *Garrett* v. *Weinberg,* 48 S. C. 28, 26 S. E. 3; *Metz* v. *Metz,* 48 S. C. 472, 26 S. E. 787.

The final question is whether this error was material. To make it material, the plaintiffs, claiming as the heirs of Charles R. Sibley, must show not only that there was an ouster of Frank Adams and Mrs. Westbrook, the heirs of Abram Adams, and an adverse holding against them for twenty years, but they must show further that such ouster and adverse holding operated in favor of Charles R. Sibley, their ancestor. We have shown that the evidence admits of no other inference than that Charles R. Sibley entered and held possession by virtue of his marital rights and not under any independent title. That being so, it seems perfectly logical and clear that all rights flowing from the possession or acquired under it attached themselves to the marital right, the right and title by which he originally entered and held; and thus are available to the husband under his marital rights during his life and then enure to the benefit of the wife who survived him. This principle is sustained by many authorities. *Templeton* v. *Twitty* (Tenn.), 14 S. W. 435; *Hatch* v. *Munden* (Wis.), 94 N. W. 332; *Mygatt* v. *Coe* (N. Y.), 46 N. E.

949; 57 Am. St. Rep. 521; *McLeod* v. *Bishop* (Ala.), 20 Sou. 130; *Potter* v. *Adams* (Mo.), 28 S. W. 490; 46 Am. St. Rep. 478; 2 Enc. L. & P. 497.

It follows that if there was a possession of the land, during the coverture of Charles R. Sibley and Eliza A. Sibley, adverse to W. F. Adams and Mary Jane Westbrook for a period of twenty years, upon the death of Charles R. Sibley such adverse possession was available to Eliza Sibley alone, and the plaintiffs as heirs of Charles R. Sibley acquired no rights by virtue of such possession.

Mrs. Eliza Sibley was made a party defendant to this action, but has refused to set up any claim by adverse possession against her children. It remains only to state the conclusion that the heirs of Abram Adams are the owners of the land and that the plaintiffs have no interest therein. As the evidence offered by the plaintiffs leads inevitably to this conclusion, any errors in the charge of the Circuit Judge were immaterial.

The judgment of the Circuit Court is affirmed.

JUDGE ROBT. ALDRICH *sat in this case in place of* MR. JUSTICE HYDRICK, *disqualified.*