### 11561

### FLOYD v. PAGE

(124 S. E., 1)

1. DOWER—THAT INFANT HEIR WAS NOT MADE PARTY HELD NOT TO AFFECT ASSIGNMENT.—That infant heir-at-law was not a party to widow's suit for dower *held* not to affect validity of assignment of dower when acquiesced in by the heir, in view of then existing statute (4 St. at Large, p. 742).

2. DOWER—SUMMONS AND COMPLAINT HELD AGAINST DEFENDANT AS ADMINISTRATOR.—In a dower action, summons and complaint *held* against defendant as administrator and not personally.

3. DOWER—THAT DOWER WAS NOT ASSIGNED IN KIND IN EACH TRACT HELD NOT JURISDICTIONAL DEFECT.—That a dower was not assigned in kind in each of six tracts of land, and no valuation and assessment of a sum in lieu of land was made, did not go to Court's jurisdiction with respect to parties and subject matter, or render judgment void.

4. DOWER—CONFIRMED RETURN OF COMMISSIONERS APPOINTED TO FIX DOWER CANNOT BE IMPEACHED COLLATERALLY.—When Court adopted and confirmed a return of commissioners appointed to fix dower, it became final judgment of a competent Court having jurisdiction of subject matter, which could not be impeached collaterally for error in confirming admeasurement of dower not in conformity with law.

5. DOWER—RULE REQUIRING ALLOTMENT OUT OF EACH PARCEL MAY BE WAIVED.—The rule requiring allotment of dower out of each of several parcels of land is subject to waiver by agreement of parties.

6. EJECTMENT—CHARGE HELD TO CORRECTLY DEFINE ISSUES.—In action to recover realty by heirs-at-law against one claiming under alleged purchaser at execution sale, charge *held* to correctly define issues.

7. LIFE ESTATES—POSSESSION HELD REFERABLE TO DEED FROM LIFE TENANT.—Possession of life tenant's grantee, during life tenant's life, *held* referable to deed from life tenant, where that was the only muniment of title entitling him to possession.

8. LIFE ESTATES—STATUTE DOES NOT RUN AGAINST REVERSIONER UNTIL LIFE TENANT'S DEATH.—The statute does not run against reversioner until life tenant's death, and fact that life tenant's grantee asserted a claim under a quitclaim deed to ownership in fee would not give reversioner such aright of action during life tenant's life as would start statute running.

9. INFANTS—REVERSIONER NOT ESTOPPED BY REPRESENTATIONS MADE DURING MINORITY OR ACQUIESCENCE THEREAFTER.—Plaintiff *held* not estopped to assert title as reversioner by alleged representations made during minority to life tenant's grantee, or by silence and acquiescence, after reaching majority, in improvements by the grantee.

10. INFANTS—WHEN DOCTRINE APPLICABLE TO INFANT STATED.—The only theory on which doctrine of estoppel is ever applicable to civil transactions of infants is that conduct relied on constitutes a tort, unconnected with contract for which infant might be held civilly liable.

11. INFANTS—CONDITIONS UNDER WHICH INFANT MAY BE ESTOPPED STATED.—For doctrine of estoppel to be invoked against infant, it must appear that conduct upon which it is based was intentional and fraudulent and infant was of years of discretion.

12. INFANTS—ELEMENTS STATED.—To estop infant, fraudulent conduct must be believed in and acted upon by other party to his detriment.

13. TRIAL—IN ACTION TO RECOVER REALTY, INSTRUCTIONS HELD NOT CHARGE ON FACTS OR ERRONEOUS.—In action to recover realty from one claiming under Sheriff's sale, instructions as to what was admitted and what defendant must prove *held* not to involve charge on fatcs and not erroneous.

Before SHIPP, J., Horry, July, 1923.   Affirmed.

Action by J. T. Floyd against William Page.   Judgment for plaintiff and defendant appeals.

See also 124 S. C., 400; 117 S. E., 409.

*Messrs. Cordie Page, R. B. Scarborough, M. C. Woods* and *Sherwood & McMillan,* for appellant, cite: *Levy defines property ordered to be sold:* 112 S. C., 392; 14 S. C., 454; 32 S. C., 453. *Must have execution to make sale:* 14 S. C., 483. *Sheriff liable to creditors for negligence:* 1 N. & McC., 11; 3 S. C., 141. *One levy and one advertisement legally sufficient:* 1 Rich., 24; 3 McC., 495; 3 Mc., 243. *When levy and sale is valid:* 2 Bailey 524; 1 Mill, 325; 4 Rich., 39; 4 S. C., 49; 2 Hill, 302. *When Sheriff's deed conveys a fee:* 37 S. C., 309; 36 S. C., 27. *Sale gives title deed and is evidence thereof:* 16 S. C., 64; 3 Strob., 215; 20 S. C., 424. *What passes under Sheriff's sale:* 3 S. C., 343. *Sale under execution is made in virtue of all existing liens:* 1 Bai. 295; I N. & McC., 408; 1 McM., 342; 1 McC., 414; 2 Hill Eq., 21; 1 Bailey, 158; 2 Speers, 92; 2 Rich. Eq., 4; 12 S. C., 97; 13 Rich. Eq., 246; 17 S. C., 371; 14 S. C., 480; 19 S. C., 337; 20 S. C., 334; 32 S. C., 270; 34 S. C., 398; 45 S. C., 291; 46 S. C., 114; 49 S. C., 389; 53 S. C., 367; 112 S. C., 392. *Purchaser at Sheriff's sale acquires rights of judgment debtor and judgment creditor in the land:* 2 Hill, 427; 13 S. E., 327; 66 S. E., 125. *Officer presumed to have discharged duties*

*until contrary is shown:* 1 Bail., 148; 12 Rich., 273. *Relation of dower to estate out of which it is assigned:* 9 Rich., 380; 5 Rich., 12; 2 Strob., 85; 1 McC., 227; 1 Hill Eq., 69; 2 McC. Eq., 143. *Merger:* 16 S. C., 329; 74 S. C., 42; *Estoppel:* 3 Strob., 367. *In action for dower heirs of husband are necessary parties if in possession of the land:* 20 S. C., 560. *Parties not bound where not parties to action:* 59 S. C., 498; 116 S. C., 7; Freeman, Judgments, 2nd Ed. Sec. 141, 133; 76 S. C., 484; 41 S. C., 337. *Necessary parties:* 19 C. J., 313, 315; 23 S. C., 502; 25 S. C., 35; 22 S. C., 323. *Form of execution against administrator or executor:* 32 S. C., 369; 108 S. C., 300; 2 Strob., 3; 8 Rich., 345; 16 S. C., 64; 21 S. C., 147; 32 S. C., 369; *Dower should be admeasured in each one of several tracts:* 1 Bay., 504; 15 N. J. Eq., 391; 26 Ill., 116; 18 S. C., 396; 5 Rich. Eq., 254; 33 S. C., 268. *Color of title:* 110 S. C., 438; 2 Hill, 492; 2 Rich., 629; 1 McC., 278; 14 S. C., 549; 25 S. C., 187; 42 S. C., 146. *Estoppel by silence:* 67 S. C., 432; 6 Jones Chancery, 166; 22 S. C., 350; 2 A. & E. Enc. L. 2nd Ed. 434; 48 S. C., 267; 27 S. C. 178; 84 S. C., 426; 68 S. C., 279; 27 S. C., 302; 3 Rich. L., 164; 2 Rich. Eq., 120. *Presumption of title after twenty years:* 113 S. C., 1; 1 Hill Eq., 376; 72 S. C., 313.

*Messrs. Lide & McCandlish,* for respondent, cite: *Statute does not run against remainderman until death of life tenant:* 59 S. C., 498. *Infant cannot be estopped by oral declarations:* 4 DeS., 465; 4 N. & McC., 241; 27 S. C., 300; 33 S. C., 285; 68 S.C., 279; 76 S. C., 561; 26 L. Ed., 87; 18 S. C., 339; 79 S. C., 407; 1 Bailey, 1.

August 2, 1924.

The opinion of the Court was delivered by Mr. Justice Marion.

Appeal by the defendant in an action for the recovery of real estate, wherein a verdict was rendered for the plaintiff. The facts essential to an understanding and appraisal

of the points sought to be raised by the appellant's 12 exceptions are as follows:

In the year 1862 John L. Floyd, the husband of Nancy Floyd and the father of J. T. Floyd, the plaintiff, was the owner of two contiguous tracts of land, which together contained about 500 acres. On March 22, 1862, William I. Graham, as administrator of Wm. H. Buck, deceased, obtained an interlocutory order for judgment against John L. Floyd for the amount due on a note for $250, bearing interest from December, 1859. Thereafter John L. Floyd died intestate some time during the Civil War, leaving as his only heirs-at-law his widow, Nancy Floyd, and his son, J. T. Floyd, the plaintiff, who was born March 11, 1862. One John N. Dorsey appears to have been duly appointed administrator of the estate of the said John L. Floyd. In the year 1867 the Buck estate, through Benj. E. Sessions, administrator *de bonis non*, obtained a judgment against John N. Dorsey, administrator of Floyd, in the action or proceeding commenced in 1861 against John L. Floyd by Graham, as the administrator of Buck. This judgment against John N. Dorsey, administrator, which will be hereinafter referred to as the Sessions judgment, appears to have been rendered on March 27, 1867. Thereupon execution was issued, dated March 28, 1867. Under this execution on April 9, 1867, the Sheriff, levied "upon the plantation and residence of John L. Floyd, deceased, containing 500 acres, more or less, as the property of the said deceased at the suit of B. E. Sessions and others." In the Sheriff's sale book appear the following entires: "Salesday, May 6, 1867. Name of parties, *B. E. Sessions v. John L. Floyd.*" Description of property sold: "The plantation and residence of John L. Floyd, deceased, embracing two tracts lying on Pee Dee road containing 50 (?) acres, more or less, as the property of John L. Floyd, deceased, at the suit of B. E. Sessions, administrator,

et al." Under column, "When sold," is the entry, "Postponed."

Prior to the rendition of the Sessions judgment of March 27, 1867, Nancy Floyd, widow of John L. Floyd, under date of January 25, 1867, commenced a suit in the Court of common pleas against John N. Dorsey, administrator of the estate of John L. Floyd, deceased, as tenant in possession of her deceased husband's real estate, alleged to consist of six tracts, containing in the aggregate 1,368½ acres, for the purpose of having her dower in said real estate assigned and admeasured to her. In that suit the issue as to whether the administrator, Dorsey, was tenant in possession of the lands was raised by the pleadings and decided in the affirmative by a finding that the widow was entitled to have her dower interest admeasured. Accordingly the dower interest of Nancy Floyd was set apart to her by commissioners duly appointed, in the form of a tract of "111 acres," which was considered and reported by the commissioners as "an equivalent for one-third of all of said real estate." The return of the commissioners, showing that they had admeasured and set apart this tract of 111 acres as the demandment's dower, was duly confirmed and made the judgment of the Court by and order of Judge Dawkins, dated March 27, 1868. That judgment was consented to by the defendant's attorney, and no motion appears ever to have been made to vacate or impeach it.

Under that judgment an execution was issued under date of March 27, 1868, and lodged in the Sheriff's office April 4, 1868, commanding that out of the lands, etc., of John L. Floyd now in possession of John N. Dorsey, administrator, the Sheriff cause to be levied a certain debt of $85.40 which Nancy Floyd, widow, had lately recovered against the said John Dorsey, administrator. That sum was apparently the amount of the costs which the widow was entitled to tax in the dower suit. An indorsement on this execution is to the effect that levy thereunder was made

April 19, 1868, "on a tract of land containing 400 acres, known as the lands of John L. Floyd, deceased, at the suit of Nancy Floyd and others as the proper land of J. L. Floyd." Another indorsement or notation thereon is as follows: "Rec'd May 4, 1868, by sale of land, $15.00. Applied $2.90 to costs—balance of $12.10 to an older lien in favor of B. E. Sessions, *Adm'r v. J. N. Dorsey, Adm'r* Daniel Lewis, Sheriff." Another is: "Received of Charles Grainger the costs in full in this case. May 4, 1868. Daniel Lewis, Sheriff."

A deed of Daniel Lewis, Sheriff, to one Charles Grainger, dated July 14, 1868, was introduced in evidence. This deed conveys to the said Charles Grainger a tract of land on the Pee Dee road, etc., "containing 400 acres, more or less, * * * adjoining lands of Nancy Floyd." etc., and contains very full recitals to the effect that the land therein conveyed was sold by virtue of a levy made under the execution issued upon the judgment recovered by Nancy Floyd against John N. Dorsey, Adm'r, etc., after due advertisement, etc., to Charles Grainger for the sum of $15, he being at that sum the highest and last bidder. Upon the executions issued under the Sessions judgment there is indorsed this notation: "Miles 18. This levy is disposed of to Charley Grainger for $15. Daniel Lewis, S. H. D." Following which there is a notation of a credit under date of May 4, 1868, of $12.10, "derived from sale of land in a case of *Nancy Floyd v. J. N. Dorsey, Adm'r.*"

Nancy Floyd went into possession of the 111-acre tract set apart to her as dower. Charles Grainger appears to have gone into possession of the 400 acres conveyed to him by the Sheriff's deed. It is not disputed that these two tracts, while contiguous, are separate and distinct.

The land involved in this action is the 111-acre dower tract. The defendant claims title under two deeds of conveyance; one from Charles Grainger, dated March 22, 1880, conveying his right and title in 150 acres, which de-

fendant contends is the dower tract, and the other from Nancy Floyd, dated September 27, 1880, covering 150 acres, which is referred to and described as the land laid off to her as her dower in her husband's lands. When defendant got the deed from Nancy Floyd, he went into possession of the dower tract, and has been in possession ever since. At that time the plaintiff, J. F. Floyd, son of Nancy Floyd, was a minor about 18 years of age.

In 1920 Nancy Floyd died, and a few months thereafter the plaintiff brought this action against the defendant to recover possession of the dower tract, claiming to be the owner in fee as the only heir-at-law of his father, John L. Floyd, deceased, entitled to possession at the termination of the life estate of his mother.

Appellant's argument here is addressed to two propositions: (1) That "the title of John L. Floyd to his wife's dower land was divested under the judgments of the Court (exceptions 2, 3, 4, 5, 6, 7, 8, 9, 11, 12)"; and (2) that "the action of dower and the admeasurement thereof was void (exceptions 1, 7, 10, 11)." Those propositions will be considered in inverse order.

As to the validity of the judgment in the dower proceeding. Appellant contends that the adjudication in the dower suit brought by *Nancy Floyd v. John N. Dorsey* was void for four reasons:

"First, the plaintiff was not a party to it; second, the action was not against the administrator of the estate of John L. Floyd, but was against John N. Dorsey personally; third, the dower attempted to be laid off to Nancy Floyd was set off in one tract of land when it should have been set off in each of the six tracts of land owned by the husband; and, fourth, the value of the real estate of John L. Floyd was not fixed by the commissioners."

As to the first reason, if the plaintiff, J. L. Floyd, as the heir-at-law of John L. Floyd, was entitled to be made a party to the widow's suit for dower, it is not apparent upon

what ground the defendant, who is not claiming under but adversely to the plaintiff's title, would have any right to challenge the validity of the proceedings on that account.

"At common law, the heirs, or whoever is the owner of the freehold, has the power and the duty of assigning dower without referring to any Court whatever." 19 C. J. 546, § 245. *Harshaw v. Davis,* 1 Strob., 74.

If the plaintiff as heir-at-law has seen fit to accept and adopt the assignment made by the commissioners, no other party would seem to be in position to raise the point that he was not a formal party to the proceeding in which dower was admeasured. Aside from that consideration, however, the requirements of the Statute then in force as to issuance of the summons in a proceeding for the admeasurement of dower, "directed to the heirs-at-law of the deceased (if of full age) or to his or her guardian, if he or she shall be an infant, and if there be no guardian, then to the executor or administration of the deceased, or to any other person or persons who may be in possession of any of the said lands" (4 Stat. at Large, 742), would seem to have been strictly complied with. The plaintiff, the heir-at-law, was an infant; it does not appear that there was a guardian; it does not appear that there was a guardian; and the direction of the summons to Dorsey, the administrator, was in conformity with the Statute.

As to the second reason, that the dower action was not against Dorsey as administrator but against him personally, the summons in dower and the complaint of the defendant very fully set forth that the claim is against Dorsey, as administrator, "tenant in possession of said lands and premises as administrator," etc. In passing, it may be said, in this connection, that appellant's suggestion that the dower proceeding should be declared void, for the reason that it was not shown that Dorsey was ever appointed administrator is obviously without merit. Even if defendant claiming that plaintiff's title had been divested under a judg-

ment recovered against Dorsey, as administrator, were in position to raise that question, there was ample evidence, in the form of the Probate records and files, from which, even in the absence of the order of appointment, after the lapse of more than 50 years, the appointment would be presumed. 23 C. J., 1082, § 237.

As to the third and fourth reasons, that the return 3-5 of the commissioners was not in conformity with law in that the dower was not assigned in kind in each of the six separate tracts of land and that no valuation of the land and assessment of a sum of money in lieu of land was made, it is apparent that the defect or infirmity here invoked does not go to the jurisdiction of the Court, with respect to parties and subjectmatter, but is predicated upon the alleged lack of power of the Court to grant the particular relief it assumed to afford the litigants. See *Frierson v. Jenkins,* 775 S. C.,471; 55 S. E., 890. Assuming—but not deciding—for the purpose of this discussion that the order of the Court confirming the return of the commissioners, which order constituted a final judgment (*Asbill v. Asbill,* 24 S. C., 355-362), is open to collateral attack by the defendant in this action, upon the theory that the judgment was void for lack of power of the Court to grant the particular relief afforded, we are clearly of the opinion that the Court of Common Pleas had jurisdiction to render the judgment. It is true that in the case of *Scott v. Scott,* 1 Bay, 504; 1 Am. Dec. 625, decided prior to 1795, where creditors of an insolvent husband intervened in a proceeding by the widow for the allotment of dower, and contested the return of commissioners assigning a house and lot to the widow in lieu of her dower in several tracts of land, it was held that the act of 1786 did not give the commissioners absolute power to disregard the rule of the common law requiring an allotment out of each of the several parcels, and that the commissioners in that case had not "pursued the terms of the law, or the powers given them

by the writ of dower, by selecting the most valuable part
of the property and giving it to the widow in lieu of dower."
But, if the Court in the Scott Case had confirmed the return
of the commissioners, would that judgment have been void
for lack of power of the Court to render it? That is the
precise question here presented. The return of the com-
missioners in the suit of *Nancy Floyd v. J. N. Dorsey,* as
administrator, was confirmed and made the judgment of the
Court. If it be conceded that the creditors of John L.
Floyd, deceased, would have had the right as proper parties
to that proceeding to except to the return and to have had
it set aside, as in the Scott Case, when the Court adopted
and confirmed it and made it the final judgment of a com-
petent Court having jurisdiction of the parties and the sub-
jectmatter, that judgment, as we apprehend, cannot be im-
eached collaterally for any error, either of law or fact, com-
mitted by the Court in the exercise of its right to decide the
question before it. 15 R. C. L., 859-862, §§ 334-336. See
*Upsor v. Horn,* 3 Strob., 108; 49 Am. Dec., 633. The ques-
tion of the confirmation or rejection of the return of the
commissioners was properly before the Court in the dower
proceeding of *Nancy Floyd v. Dorsey,* and the Court had
the right to decide that question. See *Beaty v. Hearst,* 1
McMul., 33; *Payne v. Payne,* Dud. Eq., 127; *Gibson v. Mar-
shall,* 5 Rich. Eq., 254. If so, its judgment, even if erro-
neous in that it confirmed as admeasurement of dower which
was not in conformity with the common-law rule applied in
*Scott v. Scott, supra,* is not subject to collateral attack. It
may be added, however, that, since the rule requiring an
allotment of dower out of each of several parcels of land
is clearly subject to waiver by agreement of the parties
interested (19 C. J., 579, § 371), and the order confirming
the return of commissioners here in question was consented
to by Dorsey, the administrator, in possession of the lands
as trustee for all parties in interest, it does not conclusively
appear on the face of the record that the judgment embodied

any erroneous finding of fact or conclusion of law. Certainly, it cannot be held that the judgment involved any erroneous assumption of power to grant the particular relief afforded, and its validity cannot be impeached on that ground.

All exceptions directed to the contention that the judgment in·the dower proceeding of *Nancy Floyd v. John N. Dorsey*, as Administrator of John L. Floyd, is void, and that the Circuit Judge should have so held, are overruled.

Having correctly held that the judgment of the Court of Common please in the dower proceeding established that the 111-acre tract of land sought to be recovered by the plaintiff in this action had been set apart to Mrs. Floyd, and that Mrs. Floyd's interest therein was a life estate, the Circuit Judge correctly defined the issue joined, and submitted it to the jury in this wise:

"I charge you, that both sides in this care are claiming title from John L. Floyd; that John L. Floyd is the common source of title. The plaintiff claims that he is an heir-at-law of John L. Floyd, and the title to this land went into him at the death of John L. Floyd, subject only to the life estate of his mother on account of her dower interest. Now the defendant claims through Charles Grainger. He claims that after the death of John L. Floyd—he claims that there was a judgment against John L. Floyd during his lifetime, and that after his death the judgment was revived against his administrator, and that the land was sold and brought in by Charles Grainger, and he claims under a deed from Charles Grainger. I charge you that when John L. Floyd died, although the land would descend to his heirs-at-law, it would descend subject to any incumbrance on it from any debts he owed, and, if those debts were reduced to judgment and the lands sold, the title would pass out of the estate of John L. Floyd and out of the heirs of John L. Floyd, if it was sold under judgment. * * * It having been admitted that both parties claim from a common

source, and the plaintiff having made out a *prima facie* case showing that John L. Floyd, died seized and possessed of the tract of land in question, it is up to the defendant in this case to show you that the land laid off here as a dower has been sold in some proceeding, in some legal way, so as to divest the title to the estate. of John L. Floyd from him. If that was sold by the Sheriff and sold under a valid judgment against the estate of John L. Floyd, it would have the effect of conveying the title to Grainger, and from Grainger to the defendant in the case. It being admitted by Mr. Page that he went in possession under this deed of Nancy Floyd for her dower interest, she having the right to occupy that for the term of her natural life, and if she sold it to Mr. Page it would amount to a sale of a life estate, and the statute would not begin to run until the death of Nancy Floyd. So you need not have any trouble about the statute of limitations in this case, because he went in possession under the dower deed, and he had a right to hold that, and if he held it any other way it was his duty to put the other side on notice that he was holding in some other way. He couldn't hold under a deed that gave him a life estate and then hold it in another way. A good deal has been said upon the question of estoppel. Estoppel proceeds on the theory that one person has deceived another, but there is no evidence in this case of any deception that has been practiced on Mr. Page by the plaintiff in the case. He went into possession under a deed which on its face shows it was a dower interest, and, as a matter of law, a dower interest is a life estate, and it was his duty to know what was meant by a dower estate, and he must have been deceived on some question of fact, and not a question of law. So you leave out any question of estoppel in the case."

With the foregoing views of the Circuit Judge and the rulings therein embraced before us, the exceptions of appellant, directed to the proposition that the trial Court committed error of law in failing to sustain various contentions

to the effect that "the title of John L. Floyd was divested under the judgments of the Court," will be considered.

The second exception charges error in the refusal to direct a verdict for the defendant on the ground that it appeared from the uncontradicted testimony that "the land in question had been levied upon and sold to Charles Grainger under judgment and execution against the administrator of John L. Floyd, the legal effect of such sale being to divest any title which the plaintiff might have claimed as an heir of John L. Floyd." The evidence did not conclusively establish that the land in controversy was ever sold by the Sheriff; on the contrary, the evidence tended to establish that it was not sold. The exception is overruled.

The third and eleventh exceptions impute error to 7-8 the Circuit Judge, in that he charged that the statute of limitations would not begin to run until after the death of Nancy Floyd, and that the jury need have no trouble about the Statute of Limitations in this case, etc. Reference to the excerpt from the Judge's charge above set out will disclose that the instruction complained of was predicated upon the admission by the defendant Page in his testimony that he had gone into possession of the land after and not before he had purchased the dower interest of Mrs. Floyd and had received her deed conveying that interest. It appearing as a matter of law that Mrs. Floyd had an estate in the land entitling her to possession for life, the possession of the defendant, her grantee, during her life was clearly referable to the only muniment of legal title which gave him a right to such possession, viz., Mrs. Floyd's deed. See *Sibley v. Sibley,* 88 S. C., 184; 70 S. E., 615; Ann. Cas., 1912C, 1170. That the Statute of Limitations does not commence to run against a remainderman or reversioner until the death of the life tenant or the falling in of the life estate would seem too well settled to require citation of authority: *Rice v. Bamberg,* 59 S. C., 498; 38 S. E., 209, and cases therein cited. The fact that the defendant

held a quitclaim deed to the land from Charles Grainger and that he asserted a claim thereunder to the ownership in fee would give the plaintiff as the owner of the fee in reversion no such right of action as would start the running of the Statute of Limitations against him: *Rawls v. Johns,* 54 S. C., 394; 32 S. E., 451; *Breede v. Moore,* 82 S. C., 534; 64 S. E., 604. The third and eleventh exceptions must therefore be overruled.

The contention to which exceptions 4, 5, and 6 are 9-12 directed is that the Circuit Judge committed error in charging the law of equitable estoppel. The Judge charged, in substance, that there was no evidence to sustain the defense of estoppel. To sustain that plea defendant relied on testimony which, most strongly construed in his favor, is to the effect that the plaintiff induced him to buy the dower interest of Mrs. Floyd by representing that defendant would thereby get a good title in fee; that plaintiff received the benefit of the consideration paid his mother for her interest; and that after attaining the age of 21 years during a period of about 37 years plaintiff stood by and allowed the defendant to make valuable improvements on the land. But it is conclusively established by the evidence that in September, 1880, when Nancy Floyd conveyed to the defendant this land, referred to in her deed as land laid off to her as the dower in her husband's estate, the plaintiff was an illiterate youth, about 18 years of age; that defendant was then a man of mature years; that he was the brother of Mrs. Floyd and the uncle of the plaintiff, and was aware of plaintiff's age and familiar with the family history; and that a few months prior to his purchase of his sister's dower interest he had taken a deed from Charles Grainger purporting to convey the title and interest of Grainger in the same tract. Ordinarily, an infant cannot estop himself from asserting title or right to his own property (*Herndon v. Moore,* 18 S. C., 339), and the only theory upon which the doctrine of estoppel is ever applicable to

the civil transactions of the infants is that the conduct relied upon to establish a technical estoppel constitutes a tort, unconnected with contract, for which the infant might be held civilly liable. It follows that when that doctrine is invoked against an infant it must appear that the conduct upon "which the estoppel is sought to be based was intentional and fraudulent, and that the infant was, at the time, of years of discretion." And all the elements of estoppel must, of course, concur; that is, the conduct of the infant must have been fraudulent, and believed in, relied on, and acted upon by the other party to his detriment: 31 C. J., 1005, § 33. We think the Circuit Judge correctly held that the evidence in this case is not reasonably susceptible of an inference that any such deception was practiced on the defendant by the plaintiff as would support an estoppel. There is no satisfactory evidence that the loose verbal representations ascribed to the plaintiff were intended to mislead or deceive, and no presumption that they were made with that motive may be indulged against an infant (*Seabrook v. Gregg,* 2 S. C., 68, 79); nor does the evidence justify an inference that the defendant, who was in better position to judge of the truth or value of plaintiff's alleged representations than the plaintiff himself, was in fact misled thereby. The defendant got what he purchased, the life estate of Mrs. Floyd, and remained in undisputed possession and enjoyment of the premises for a period of 40 years. The suggestion that the benefits of this particular transaction were so appropriated for the infant's advantage as to give rise to a form of equitable estoppel rests upon no adequate basis of fact. There was no sale or attempted sale by the infant of his interest in the land, and any benefit the plaintiff received from the consideration of $100 paid by defendant to the widow is entirely consistent with and attributable to his right to receive any part of the proceeds of a valid sale of the dower interest his mother might see fit to bestow upon a son.

If the plaintiff was not estopped to assert title as reversioner by the alleged false representations made during his minority, that is, if upon his arrival at full age there was no estoppel outstanding against him, it would seem entirely clear that an estoppel cannot be predicated on the conduct ascribed to him after he had attained his majority—that of silence and acquiescence in the alleged making of improvements by the defendant on the premises held by him in life tenancy. We know of no principle of law or equity which imposes upon a reversioner or remainderman any duty to speak when the life tenant sees fit to make improvements on premises lawfully in his possession and occupancy for the period of his own or another's life. The question here involved is not that of estoppel to invoke the benefit of the statute (Section 5520, Vol. 3, Code, 1922) requiring ratification in writing after full age of "any promise made * * * during infancy," etc. See *Exchange Bank v. McMillan,* 76·S. C., 570; 57 S. E., 630, and *Steele v. Poe,* 79 S. C., 407; 60 S. E., 951, and cases therein cited. There was here no promise or contract of the infant which would have ripened into an enforceable obligation by ratification in writing after full age. But, in view of the statute (which was in force in 1880 when the transaction here in question is alleged to have occurred) requiring ratification in writing after full age of even a definite promise or contract of an infant, it would seem entirely clear that appellant's contention that the plaintiff in this case was estopped by conduct after full age to disaffirm an estoppel arising out of his conduct during infancy is untenable.

Exceptions 7, 8, and 9 impute error to the Circuit Judge in charging in substance that it was "admitted in the testimony of the defendant Page that he bought the dower claim of Mrs. Floyd and went into possession of the land under that deed," and, if Page entered and took possession under that deed, "he would have a legal right to hold it only as long as Mrs. Floyd lived, and

when she died the land would revert to the plaintiff in the case," unless it was found that the defendant had a valid deed from Charles Grainger"; that it was incumbent on the defendant to "show that there was a valid sale of the land by the Sheriff of the interest of the estate of John L. Floyd"; and that it was for the jury to say "whether Charles Grainger got a deed from the Sheriff for that tract of land"; and that, "if he did, the defendant would be entitled to a verdict." The evidence is open to no other reasonable inference than that the defendant went into possession of the land under the deed of Nancy Floyd, and, if the title of the plaintiff as the heir-at-law of John L. Floyd, the common source had not been divested through a valid sale by the Sheriff to Charles Grainger, under whom the defendant claimed, the evidence afforded no basis of fact for a recovery by the defendant. There was no evidence, certainly, which would reasonably support a finding of fact that there had ever been a valid sale of the land by the Sheriff to any one other than Charles Grainger. The objection that the instructions involved a charge on the facts is therefore untenable. In so far as the portions of the charge complained of stated the law applicable to the facts of the case bearing directly on defendant's vital contention that the title of John L. Floyd had been divested by a valid sale to one Charles Grainger, evidenced by the Sheriff's deed to Grainger, records of the Sheriff's office, etc., we perceive no ground for valid criticism. That no such ground exists would seem entirely apparent when the expressions criticised are considered in connection with the Judge's charge in response to defendant's twelfth request, to the effect that, if the Sheriff made the sale of the land, and the purchaser paid the purchase price that would entitle such purchaser to the equitable title at least and divest the title of the heirs-at-law of John L. Floyd, even if the Sheriff had not made the deed.

It is further contended in this connection, however, (twelfth exception), that the Trial Judge erroneously instructed the jury as follows:

"I cannot charge you that it is a matter for you to decide under which levy this sale was made, because it is admitted here that the sale of the 400-acre tract does not cover the land in dispute. I charge you now that the levy on the 500-acre tract was made under the Sessions judgment and it is up to the defendant to show that there was a sale made under the Sessions execution by the greater weight of the testimony."

If it was not "admitted" that the sale of the 400-acre tract described in the Sheriff's deed to Grainger did not cover the land in dispute, the evidence was clearly susceptible of no other reasonable inference. There was no evidence of a levy by the Sheriff on the land here in dispute, except in so far as it was included in the 500-acre tract levied upon under the Sessions judgment. If the land in dispute was not sold under the execution based upon the Sessions judgment, we concur in the view of the Circuit Judge that there was no evidentiary basis for a finding that it was ever sold at all; hence it was incumbent on "the defendant to show that there was a sale made under the Sessions execution." Granting that Grainger who purchased the 400-acre tract at Sheriff's sale was entitled to the protection, for the purpose of validating his purchase, of both the Nancy Floyd judgment and execution and the older Sessions judgment and execution, he was entitled to the protection of the Sessions execution only to the extent the land purchased by him was included in the levy made under that execution. If the land here in dispute, levied on under the Sessions execution, but not under the Nancy Floyd execution, was not actually sold to Grainger, obviously he was not entitled to claim the benefit of the Sessions execution and levy to protect something he did not buy. If he did buy the land in dispute, he bought it under the only

,execution, to which a levy thereon could be referred, viz.,
the Sessions execution. Clearly, in order to divest the
title in and to this 111 acres, whether that title be regarded
as in the Sheriff as trustee or in the heirs-at-law of John L.
Floyd, a sale by the Sheriff by virtue of the only execution
under which he had levied upon the land was essential:
*Ward v. Cohen,* 3 S. C., 343. In no view of the case can
we see that the Court's charge to that effect involved prej-
udicial error.

It is proper to add that we have carefully considered ap-
pellant's elaborate and ingenious argument directed, in the
main, to a demonstration or attempted demonstration of
the proposition that the evidence adduced in the case con-
clusively establishes as a matter of law that, as to the dower
tract of 111 acres here in dispute, the title of the heirs at
law of the judgment debtor, John L. Floyd, was divested
by the levy under the Sessions execution and judgment and
by the sale thereafter of certain land to Charles Grainger.
The insuperable obstacle in the defendants' way is that the
evidence tends to establish, or is in any view susceptible of
the inference, that as a matter of fact the Sheriff never sold
or attempted to sell this dower tract under either the Nancy
Floyd or the Sessions executions to Charles Grainger or
to any one else. Granting that the Sheriff had authority
to sell it, and that it was his duty as trustee for the judgment
creditors to sell it, it does not follow, because he sold part
of the land which was levied on under the Sessions execution
to Charles Grainger, that he either intended to sell or ought
to have sold the remainder of the land levied on to Grainger
for the consideration of $15. We therefore see no sound
basis for the application of the principle that equity regards
as done that which ought to have been done, for the purpose
of having the Sheriff's deed, to Grainger construed and
declared to cover the reversionary interest in fee of the
heirs of John L. Floyd in the dower tract here involved.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.

CHIEF JUSTICE GARY did not participate.