## 15293

WELLS v. COURSEY ET AL.
SAME v. BECKAM ET AL.

(15 S. E. (2d), 752)

March, 1941.

*Mr. W. H. Nicholson,* of Greenwood, for appellant,

*Messrs. Mays & Featherstone,* of Greenwood, for respondent,

July 11, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The appellant, D. P. Coursey, was the successful bidder at a judicial sale for the lot of land described in the complaint, but he refused to comply with his bid upon the ground that

title to the premises is defective. Upon the return to a rule issued against him, the questions at issue were referred to the Master of Greenwood County, who was directed to take the testimony and report his findings of fact and conclusions of law. He, therefore, submitted his report, finding all issues against the contention of the appellant, and recommending that he be required to comply with his bid. Upon appeal, the Circuit Court affirmed the Master's report, and from this judgment the defendant appeals. The appeal does not challenge either the facts or the law as stated by the Master. The sole question for determination is whether the admitted facts are sufficient on which to base a finding that I. B. Stockman and H. J. Stockman acquired title by adverse possession to the one-third interest in the property held by their father, A. C. Stockman. Appellant contends that the trustees of A. C. Stockman, deceased, own an undivided one-third interest in the land, subject to disposition by them under the terms of his will.

The facts, which are not in dispute, follow: In October, 1912, A. C. Stockman and his two sons, H. J. Stockman and I. B. Stockman, acquired title by duly recorded deeds to the lot of land in question, as tenants in common, each owning an undivided one-third interest therein. At the time of the purchase of this property a cotton ginnery was located thereon, and had been operated by a corporation known as Panola Ginnery. Immediately upon acquisition of title, H. J. Stockman and I. B. Stockman went into exclusive possession of the property and took over and assumed the sole conduct and management of the ginnery and conducted the same as their own until its operation was discontinued some years later. Some time subsequent to 1912, while the ginnery was still in active operation, they erected a two-story building on the premises and installed therein a flour mill and feed mill. H. J. Stockman and I. B. Stockman later discontinued the operation of all of these plants, and sold the machinery to various persons. At some later time, the date of which is not fixed, I. B. Stockman and H. J. Stockman

erected other improvements, which are still on the property, to wit: a garage building, two small buildings, and a warehouse, which they rented out to various persons, and received the rents therefor.

When the title vested in the father and his two sons in 1912, the property was returned for taxation in the name of Panola Ginnery. It was similarly returned in 1913. But in 1914 the property was listed and returned in the name of "I. B. and H. J. Stockman (Panola Ginnery)," the latter being a descriptive name, and the name under which the property had been returned for taxation all of the years previous to 1912. Subsequent to the year 1914 and up to and including 1927, the property was again listed in the name of Panola Ginnery.

H. J. Stockman died in 1927, leaving a will, and thereafter an action was brought for the partition of his real estate, which resulted in a decree of date November 9, 1928, awarding to his son, E. W. Stockman, a one-half interest in the lot of land now under discussion. The other one-half interest was claimed by I. B. Stockman. So that in the year 1928 we find this lot listed for taxation in the name of "Panola Ginnery (I. B. and E. W. Stockman)." And from that time on it was similarly returned each year until 1941, when this proceeding was instituted. I. B. Stockman died in the year 1940, leaving a will wherein he disposed of all of his real estate to certain named beneficiaries.

It is admitted that from the beginning of the year 1914, in which year the land was listed for taxation in the name of I. B. Stockman and H. J. Stockman, down to the commencement of this proceeding, I. B. Stockman and H. J. Stockman, and those who succeeded to their interests under their respective wills, have been in the actual, visible, exclusive, hostile, and uninterrupted possession of the premises. During this period of twenty-seven years the use of the property was exclusively exercised by them; they treated it as their own, and they recognized no rights in A. C. Stockman or his successors in interest.

Further adverting to the admitted facts, it should be stated that A. C. Stockman died on September 13, 1924, leaving a last will and testament wherein he devised his real estate, subject to certain limitations, to the four following-named trustees. I. B. Stockman, H. J. Stockman, J. P. Stockman, and B. A. Hunter, with power vested in them to divide and convey his property in equal shares to Mary E. Hunter, H. J. Stockman, I. B. Stockman, and J. P. Stockman. These devisees were given a life interest in the portions of real estate set off to them. After their death the named trustees, or their successors, were directed to divide the property so allotted to each in kind among their respective children for and during the term of their respective lives, and after the death of such children, or any of them, the part set off to such child or children became vested in fee simple in his or her child or children.

Each of the original devisees had a number of children, and certain of these children are married and have children. Other provisions of the will keep alive the duties of the trustees or their successors, so that the legal estate still remains vested in the trustees. The present trustees are named in the title of this case, and were all parties to this proceeding, whereby it is sought to compel D. P. Coursey to complete his purchase of the ginnery property. None of the trustees appealed from the findings and conclusions of the Master. D. P. Coursey alone filed exceptions to the Master's report, and now brings his appeal to this Court from the judgment of the Circuit Court. If this Court concludes that the title is not defective, he is ready to comply with his bid.

It should be further stated in this necessarily lengthy review of the facts that the lot in question was ordered sold under a decree in a partition proceeding, in which all of the devisees and the heirs-at-law of I. B. Stockman and H. J. Stockman were parties, and in which they claimed title to the ginnery property.

A. C. Stockman from 1912,—the year he and I. B. Stockman and H. J. Stockman acquired title to the premises,—

until the year 1924,—the year of his death—was a resident of Greenwood and in a position to know the facts relative to the exclusive possession, management and use of the property we are now concerned with, and the Master finds under all the facts of the case,—which are concurred in by the Circuit Court,—that A. C. Stockman must be deemed to have had notice, certainly from the year 1914, that H. J. Stockman and I. B. Stockman were claiming exclusive ownership of the property.

These two sons, together with the other two trustees, in the year 1926, divided the real estate of A. C Stockman into four equal parts as directed by the will, and executed four deeds therefor to Mary E. Hunter, H. J. Stockman, I. B. Stockman, and J. P. Stockman, respectively, conveying to them various parcels of real estate subject to the limitations set out in the will. The lot now under discussion was not included in this realty, and the Master finds that the fact that H. J. Stockman and I. B. Stockman did not list this particular property for division amounts to a public denial to the other two trustees that A. C. Stockman had any interest therein.

The record does not show that A. C. Stockman ever paid or contributed to the payment of the taxes on the property in question, and it is conceded that following his death his estate has not made such payment. Nor since 1912, when the property was acquired, does it appear that A. C. Stockman ever exercised any control over the premises. In fact, the inference is plain that all of the trustees, including Mary E. Hunter and J. P. Stockman, considered this property as belonging to and as having always belonged to I. B. Stockman and H. J. Stockman.

The one distinctive feature of every co-tenancy is the right of each tenant, in common with his co-tenants, to the possession of the premises held in common. An immediate and necessary corollary to this rule is the principle that the possession of one tenant in common is the possession of all. His sole occupancy of the common property is

entirely consistent with the existence of the co-tenancy and a full recognition of the rights of his co-tenant to enter and share the possession with him at any time. In the absence, therefore, of facts showing that he holds possession of the premises in opposition to such rights in his cotenants, his occupancy will be presumed to be that of a tenant in common, recognizing the co-tenancy.

This presumption is a rebuttable one, and the operation of the rule that the possession of one co-tenant is the possession of all, ceases from the moment that such possession becomes adverse to the co-owners of the possessor. If it appears that the party occupying the premises holds not in recognition of, but in hostility to, the rights of his co-tenants, his possession ceases to amount to constructive possession by them, becomes adverse, and if maintained for the twenty-year period, or for the period provided for by the statute of limitations, will vest in the possessor a sole title by adverse possession to the premises.

In order that one of several co-tenants may acquire title by adverse possession as against the others, his possession must be of such an actual, open, notorious, exclusive and hostile character as to amount to an ouster of the other co-tenants. While a physical ouster, or "turning out by the heels," as some of the Judges have termed it, is not necessary in establishing title in a tenant in common by adverse possession, nevertheless an actual ouster and an exclusion of the other tenants from possession must be shown. The acts relied on to establish an ouster must be of an unequivocal nature, and so distinctly hostile to the rights of the other co-tenants that the intention to disseize is clear and unmistakable.

The foregoing principles of law have long been established and maintained in this jurisdiction, and are fully supported by the following cases: *Weston v. Morgan,* 162 S. C., 177, 160 S. E., 436; *Powers v. Smith,* 80 S. C., 110, 61 S. E., 222; *Sibley v. Sibley,* 88 S. C., 184, 70 S. E., 615, Ann. Cas., 1912-C, 1170; *Whitaker v. Jeffcoat,* 128 S. C., 404,

122 S. E., 495; *Satcher v. Grice,* 53 S. C., 126, 31 S. E., 3; *Miller v. Cramer,* 48 S. C., 282, 26 S. E., 657; *Gray v. Givens,* 2 Hill Eq., 511, 11 S. C. Eq., 511; *McGee v. Hall,* 26 S. C., 179, 1 S. E., 711.

Applying these principles to the facts of this case, ■ we are satisfied that the Master and the Circuit Court were right in holding that title to the A. C. Stockman interest ripened in I. B. Stockman and H. J. Stockman and their devisees, by reason of their adverse holding for a period of twenty-seven years,—seven years longer than the period required to presume a grant.

It was held in *Roberts v. Roberts,* 2 McCord Law, 268, 13 S. C. L., 268, 13 Am. Dec., 721, that a son may hold land adverse to his parent; however, in all cases the character of the possession is a question for the jury. And in *Miller v. Cramer, supra* (48 S. C., 282, 26 S. E., 661), it was said: "Even a co-tenant is not bound to give actual notice to his co-tenant of 'ouster or disseisure.' 'He must, in the language of the authorities, "bring it home" to his co-tenant. But he must do this by conduct, the implication of which cannot escape the notice of the world about him, or of any one, though not a resident in the neighborhood, who has an interest in the property, and exercises that degree of attention in respect to what is his that the law presumes in every owner.' "

The open, notorious, continuous, hostile and exclu-■ sive possession by one tenant in common with the use and exercise of authority incident to exclusive and adverse ownership for a period of twenty years presumes ouster, and to acquire such possession an heir may tack his possession to that of his ancestor. *Powers v. Smith,* 80 S. C., 110, 61 S. E., 222; *Miller v. Cramer,* 48 S. C., 282, 26 S. E., 657; *Gray v. Givens,* 2 Hill Eq., 511, 11 S. C. Eq., 511; *McGee v. Hall,* 26 S. C., 179, 1 S. E., 711.

And it was said in *Powers v. Smith, supra* (80 S. C., 110, 61 S. E., 223) : "Inaction by tenants in common or

any others, claimants to land, for 20 years in the face of notorious and exclusive possession, with the use and exercise and authority incident to exclusive and adverse ownership, is sufficient to rebut the presumption that possession is in subordination to the legal tile, and to establish the presumption of a grant or deed, and almost any other presumption necessary to the protection of the possession. *Gray v. Givens* [*supra*]; *Trustees v. McCully,* 11 Rich. Law [424], 429; *Massey v. Adams,* 3 S. C., 254; *McGee v. Hall* [*supra*]; *Stone v. Fitts,* 38 S. C., [393], 395, 17 S. E., 136; *Trustees v. Jennings,* 40 S. C., [168], 179, 18 S. E., 257, 891, 42 Am. St. Rep., 854; *Miller v. Cramer* [*supra*]; *Metz v. Metz,* 48 S. C., 472, 26 S. E., 787; *Young v. McNeill,* 78 S. C. [143], 155, 59 S. E., 986."

It clearly appears that the twenty-year period began to run against A. C. Stockman not later than the year 1914, and its currency was not interrupted by his death in 1924. The two trustees, I. B. Stockman and H. J. Stockman, claimants of the lot, unmistakably denied and disclaimed by their acts any trust therein. Thereafter, they occupied the position of strangers insofar as this particular lot is concerned. The other two trustees, who were also beneficiaries under the A. C. Stockman will, raised no protest then and none now,— doubtless because, as shown by the evidence, this lot had always been regarded as the property of I. B. Stockman and H. J. Stockman. The record shows not the slightest suggestion of collusion.

"A stranger who, by adverse possession, bars the estate of the trustee, bars also the estate of the *cestui que* trust, and the rule is held to apply although the *cestui que* trust holds only a remainder, whether it be vested or contingent, and although the *cestui que* trust is under some disability, such as infancy * * *." 65 C. J., Sec. 295; p. 544; *Waring v. Cheraw, etc., R. Company,* 16 S. C., 416; *Starke v. Starke,* 3 Rich. Law, 438, 37 S. C. L., 438; *Long v. Cason,* 4 Rich. Eq., 60, 25 S. C. Eq., 60.

It is suggested that the Court erred in not finding that the devisees and legatees under the will of A. C. Stockman were necessary parties to this proceeding. We do not think the Court erred in not so finding. Under the terms of the will the trustees held legal title to the lot in question, and as such represented the *cestui que trustent,* and the latter are not necessary parties. Code, Sec. 399.

The above Code section provides that a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the persons for whose benefit the action is prosecuted. The statute applies whether the trustees are parties plaintiff or parties defendant; and inasmuch as all of the trustees under the will of A. C. Stockman are parties to this proceeding, it was not necessary that the beneficiaries be made parties.

In our opinion, the issue of title must be determined against the contention of D. P. Coursey. The cause is remanded for such further proceedings as may be necessary to enforce the provisions of the Circuit decree.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and STUKES and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.